DANIEL MCKENNA vs. NATHANIEL T. KIMBALL & others.

Essex.   Nov. 3, 1887. — Jan. 6, 1888.   DEVENS & KNOWLTON, JJ.,
absent.

Under the Pub. Sts. c. 44, § 46, which imposes upon the school committee of a town,
unless the town otherwise directs, the duty of keeping "the school-houses in
good order," and of providing "all things necessary for the comfort of the schol-
ars," the committee may lawfully order a tree on a school-house lot to be cut
down; and they are not liable for the negligence of those whom they employ
to execute their order.

TORT, against the school committee of the town of Bradford.
Trial in the Superior Court, before *Hammond*, J., who allowed
a bill of exceptions, in substance as follows :

The evidence of the plaintiff tended to show that there was a
tree standing upon a lot of land, owned by the town of Bradford,
which lot adjoined Main Street, a public highway in said Brad-
ford; that on the lot there was a school-house used for a high
school; that the defendants, who were the school committee at
the time, decided by a vote taken upon the ground to cause the
tree to be felled, and to employ one Knight, who was a highway
surveyor, to fell the tree; that the three defendants directed
Knight to fell the tree, and subsequently the tree was felled by
two men other than Knight, but it did not appear by whose
order, except as hereinbefore stated.   There was no evidence
or claim that Knight was not a proper person to employ to do
such a piece of work.   It did not appear that the town of Brad-
ford had given any direction relieving the school committee of
the duties imposed by the Pub. Sts. c. 44, § 46.

The plaintiff testified that he was at work on the highway for
a horse-railroad company, grading the highway at a point oppo-
site said school-house lot at the time said tree was being felled;
that said tree fell across the highway, and a limb struck him upon
the back and severely injured him; and that he heard no warn-
ing from anybody that the tree was about to fall.   Two wit-
nesses testified that they were at work with the plaintiff at the
time the tree fell, and that they heard a shout of warning after
the tree had begun to fall, but none before.   There was evi-
dence that no rope or support of any kind was used while the

tree was being cut down. One witness testified that he looked at the roots of the tree after it had fallen, and that they had all been cut away except two, that all the roots extending sidewise from the tree had been cut, and the earth removed from about the base of the tree; and that the tree was about forty feet in height.

There was no other evidence of negligence of those felling the tree, or of due care on the part of the plaintiff.

The judge ruled that the action could not be maintained, and ordered a verdict for the defendants. The plaintiff alleged exceptions.

*W. H. Moody & E. B. Fuller*, for the plaintiff.

*S. A. Abbott & F. H. Pearl*, for the defendants.

W. ALLEN, J. The Pub. Sts. *c.* 44, § 21, provide for the election of a school committee by each town, which shall have the general charge and superintendence of all the public schools of the town. The school committee is a board of public officers whose duties are prescribed by statute, and in the execution of its duties the members do not act as agents of the town, but as public officers in the performance of public duties. Besides the general provision before referred to, the statutes specify various duties required of the committee, and among them the care of school-houses. This duty is absolute in regard to high school houses. Pub. Sts. *c.* 44, § 41; *c.* 45, § 16. Since the abolition of school districts by the St. of 1882, *c.* 219, the Pub. Sts. *c.* 44, § 46, give the care of all the school-houses to the committee, unless the town otherwise directs. The language is the same in both provisions. The school committee "shall keep such houses in good order, and shall procure a suitable place for the schools, where there is no school-house, and provide fuel and all things necessary for the comfort of the scholars therein, at the expense of the town." Section 50 provides that the school committee of a town shall have the general charge and superintendence of the school-houses therein, so far as relates to the uses to which the same may be appropriated. The town of Bradford gave no direction in regard to the care of its school-houses, and it was the official duty of the defendants to care for them, with all the authority expressly or impliedly given to them as the school committee of the town. The committee voted to cause a tree

standing on the high school lot to be cut down, and to employ one Knight, who was a highway surveyor, to fell it, and directed Knight to do so. The tree was afterwards cut down by two men, who, it may be assumed, acted under orders from Knight. Knight was a suitable person to be employed to fell the tree. The tree fell upon the plaintiff and injured him, as he alleges, in consequence of the negligence of the persons engaged in cutting it down. The only question is whether the defendants are responsible for the negligence of those persons.

If the school committee had authority to order the tree to be felled, the vote must be taken to have been a proper exercise of that authority. It does not appear that any notice of the meeting was required, and it does not appear what notice was given, but the committee were all present at the meeting. It is not necessary that the vote should have been upon a written motion. No objection was made that the vote was not proved by the record required by the Pub. Sts. *c.* 44, § 27, and the questions whether a record of the vote was made, and whether, if there was no record, the vote was therefore invalid, were not raised. See *Russell* v. *Lynnfield,* 116 Mass. 365. The defendants were not themselves negligent, and, if their vote was an official act, they are not responsible for the negligence of those whom they employed in carrying it out. The doctrine of *respondeat superior* is founded on the supposed benefit to the master of the act of the servant, and does not apply to a public officer employing agents in the discharge of a public duty. *Nowell* v. *Wright,* 3 Allen, 166. *Hill* v. *Boston,* 122 Mass. 344. Story on Agency, § 319.

The case is then narrowed to the single question, whether the school committee had authority to remove the tree from the lot on which the high school building was situated. If they had, they were the judges of the necessity and the propriety of its removal, and it was not necessary to recite in the vote the occasion for their action. It is immaterial whether the tree endangered the school building, or the children attending the school, or what the reason for its removal was. The right to remove it involved, or rather arose from, the duty of determining whether the removal was necessary. The town owned the school building and lot, but it had appointed no agent to have charge of it, and no officer had any authority over it, except the school committee. The

duty expressly put upon the committee by statute, to keep the school-house in good order, and to provide all things necessary for the comfort of the scholars, included the care of the lot on which the house stood, as well as of the house. It was their duty not only to take · proper measures to protect the school-house from threatened danger, but to see that the access to it over the lot from the adjoining street was safe and comfortable for the scholars, and that the lot was kept in proper condition for them to use in connection with the school-house. This would be included in their general duty of charge and superintendence of the school, if it was not within their specific duty in regard to school-houses. But we cannot doubt that the statute made it their duty to keep the lot, as well as the house upon it, in good order. If snow, or if a fallen tree, incumbered the lot, they could remove it; and they were not obliged to wait until the tree fell. It was their duty to exercise their judgment and discretion as to the necessity and propriety of cutting it down, and to act thereupon, and in so do doing they were acting as public officers, in the discharge of a public duty.                    *Exceptions overruled.*