Argued April 16, affirmed September 24, 1929.

A. 'ANTIN, Administrator, v. UNION HIGH
SCHOOL DISTRICT No. 2 OF CLATSOP
COUNTY et al.

(280 Pac. 664.)

For appellant there was a brief over the name of *Messrs. G. C. & A. C. Fulton,* with an oral argument by *Mr. G. C. Fulton.*

For respondents there was a brief over the name of *Messrs. Norblad & Hesse,* with an oral argument by *Mr. Frank C. Hesse.*

RAND, J.—Plaintiff's intestate, a pupil of Union High School District No. 2 of Clatsop County, sustained injuries causing his death from the explosion of the pneumatic water-tank which had been installed on the school premises about two months prior thereto and was being operated solely for the purpose of supplying water to the school. Plaintiff brought this action against the school district and also against all of the directors of the district individually, to recover damages for decedent's death, which the complaint alleges was caused by the joint negligence of all of the defendants. The explosion occurred on a school day and during a recess while decedent, then nineteen years of age, was engaged, under the direction of one of the teachers of the school, with other pupils in work on the school premises. The particular negligence charged in the complaint is that the tank was one which could be operated only under a high pressure, and that it was negligently installed, maintained and operated by the defendants without any safety device with which to control the pressure, or to render its operation safe, and that, because of the high pressure under which it was being operated and the want of such device, it exploded and caused the death of decedent.

The learned trial court sustained general demurrers to the complaint as to all of the defendants, upon the ground that the installation, maintenance and operation of the tank by the defendants, which was used exclusively for furnishing water for school purposes, were public or governmental acts, for which the district, whether negligent or not, would not be

liable, and that the directors of the district, for the same reason, are immune from personal liability except for their own individual negligent acts, and that there was no allegation in the complaint that any of the directors had been guilty of any personal negligence. The correctness of this ruling is the only question for review upon this appeal.

We must assume for the purposes of the demurrer that the district was negligent in installing and operating the tank on the school grounds without any proper safety device to prevent it from exploding. The tank was on the school grounds, and it was being used by the district as a means of supplying water for school purposes. Decedent was a pupil of the school and was lawfully there at the time he sustained the injuries which caused his death.

A school district is a civil division of the state. It is an agency of the state, created by law for the purpose of promoting education. It derives all of its powers from the statute, and discharges only such duties as are imposed upon it by statute, or which it assumes under the authority conferred by the statute. The statute requires it to provide a school building, and to operate and maintain the building for educational purposes; and it is as much its duty to furnish water for the use of the school as it is to furnish heat or light for such purpose. It has been generally held that, in the absence of statute, a school district is not liable for injuries caused by its own negligence, or by the negligence of its officers or agents, in the construction of a school building, or in failing to keep the building or premises in proper repair and condition, but that when, in the exercise of its corporate powers, a school district creates or permits a nuisance by misfeasance

or nonfeasance, it is liable in damages to any person suffering special injury therefrom: 35 Cyc. 971; 43 C. J., p. 921.

Under our statute, Sections 357, 358, Or. L., a school district may sue or be sued, and an action may be maintained against a school district "for an injury to the rights of the plaintiff arising from some act or omission" of the district: Or. L., § 358. If this were a case of first impression and there were no controlling decisions upon this question, we would be inclined to hold, at least such is the opinion of the writer, that the legislature intended by the enactment of these two sections to make a school district liable for the consequences of its own wrongful or negligent acts, although not liable for the misfeasance or nonfeasance of its officers or agents; and such was the effect of the holding in *McCalla* v. *Multnomah County*, 3 Or. 424, when the statute as then in force, now Section 358, Or. L., embraced not only incorporated towns, school districts and other public corporations of like character, but also counties. But this statute has been too often construed by this court, and held not to include within its purview an injury arising from some public or governmental act of a public corporation, to be now open to question in respect to the nonliability of a public corporation for an injury arising from the performance by it of a public or governmental act: *Caspary* v. *City of Portland*, 19 Or. 496 (24 Pac. 1036, 20 Am. St. Rep. 842); *Esberg Cigar Co.* v. *City of Portland*, 34 Or. 282 (56 Pac. 961, 75 Am. St. Rep. 651, 43 L. R. A. 435); *Wagner* v. *Portland*, 40 Or. 389 (67 Pac. 300); *Pacific Paper Co.* v. *Portland*, 68 Or. 120 (135 Pac. 871); *Blake-McFall Co.* v. *Portland*, 68 Or. 126 (135 Pac. 873); *Wiest* v. *School Dist. No. 24*, 68

Or. 474 (137 Pac. 749, 49 L. R. A. (N. S.) 1026);
*Ryder* v. *La Grande,* 73 Or. 227 (144 Pac. 471); *Cole-
man* v. *La Grande,* 73 Or. 521 (144 Pac. 468); *Hum-
phry* v. *Portland,* 79 Or. 430 (154 Pac. 897 ); *Spencer*
v. *School Dist. No. 1,* 121 Or. 511 (254 Pac. 357).
Referring to these two sections of the statute,
in *Wagner* v. *Portland, supra,* this court said:

"But it only gives the action against the munici-
pality when it is liable in its corporate capacity, as
distinguished from its political or governmental
capacity, as an arm of the state in the exercise of
sovereignty."

The construction thus given to the statute followed
the construction given by previous decisions, and it
has been followed in all subsequent decisions upon
that question. These decisions recognize that a mu-
nicipal corporation such as a city or town may be
both a subordinate agency of the state, created to
discharge duties of local government imposed upon
it by statute, and a corporation which may exercise
private or proprietary functions, either for emolu-
ment or gain or for the peculiar benefit of the people
of the locality, and that, while it is so engaged in
the exercise of its corporate or private functions,
the municipality is answerable in damages for the
negligence of its officers, agents or employees, but
that it is not answerable while engaged in the dis-
charge of public duties imposed or assumed for the
benefit of the state at large. While acting in the
exercise of its private or proprietary functions, the
officers and employees of the municipality act as
agents of the municipality, and for their acts the
municipality is answerable under the doctrine of
*respondeat superior;* but, while acting in the per-
formance of its governmental functions, the munici-
pality is not liable, either for its own or their negli-

gent acts or omissions. When a city undertakes to
furnish water, manufacture gas, generate electricity
or operate street railways for emolument or gain,
or for the peculiar benefit of its citizens, it is acting
in its private or proprietary capacity and is respon-
sible for its own negligent acts or omissions. But
when a municipality provides police, fire or health
protection, or education for its youth, such functions
are public or governmental in their nature, and for
its own negligent acts or wrongful omissions, or
those of its agents and servants, it is not liable to
suit by a private person. The law upon this ques-
tion is so well settled by the decisions referred to that
it is no longer open to question in this state. In pro-
moting the education of pupils of school age within
a school district, the district is exercising a public
function as an agency of the state, and is perform-
ing a duty imposed upon the district *nolens volens*
by statute. As said by Mr. Justice BEAN, speaking
for the court in *Esberg Cigar Co.* v. *Portland, supra:*

" * * Accordingly it has been held that municipal
corporations are not responsible for the negligence
or wrongful acts of health officers or boards of
health, * * or for an injury caused by a negligent
defect in a school building: *Ham* v. *Mayor of New
York,* 70 N. Y. 459; *Hill* v. *City of Boston,* 122 Mass.
344, 23 Am. Rep. 332 * * . But when a special
power or privilege is conferred upon or granted to
a municipal corporation, to be exercised for its own
advantage or emolument, and not as a mere govern-
mental agency, it is liable to the same extent as an
individual or a private corporation for negligence
in managing or dealing with the property rights or
franchises held by it under such grant."

■■ It is clear from the authorities to which we
have referred that, where a municipal corporation is
acting in its private or proprietary capacity, the mu-

nicipality is responsible for the consequences of its own negligent acts or omissions, as well as for the negligent acts and omissions of its subordinates, officers, agents and employees, under the doctrine of *respondeat superior,* and that the municipality is liable in such case for the acts of its agents, as if it were a private individual. But when the municipality is acting as an arm of the state, and performing duties imposed upon it by statute for the public good, there exists no such relation between the corporation and its officers, agents and employees, and the municipality is not liable to suit of a private party, either for their acts or for its own.

It is said, however, that official duties are of two classes: ministerial or mandatory, and discretionary or judicial, and that the immunity of a municipality does not exist if the act complained of was done in the performance of a ministerial duty, such as the repair of a fire-alarm system, as held in *Wagner* v. *Portland, supra.* It was held in that case that the installation and maintenance by a city of a fire-alarm system is a governmental function, but that, when out of repair, the repairing of it was ministerial and not governmental, and that the municipality was liable for its negligence in making the repair. It was also held in *Ryder* v. *La Grande, supra,* that the repair of a sidewalk was ministerial, although the city was under the duty of keeping its sidewalks in repair and reasonably safe for travel. Other cases holding to the same effect are *Giaconi* v. *City of Astoria,* 60 Or. 12 (113 Pac. 855, 118 Pac. 180, 37 L. R. A. (N. S.) 1150), *Warren* v. *Astoria,* 67 Or. 603 (135 Pac. 527), and *Myrtle Point T. Co.* v. *Port of Coquille River,* 86 Or. 311 (168 Pac. 625). In the Giaconi case it was held that a municipal corpora-

tion, in devising plans for improving public highways within its borders, acts judicially, and, when proceeding in good faith, is not liable for errors of judgment, but that, in constructing the work, it acts ministerially and is bound to see that the plan is executed in a reasonably safe and skillful manner, and that if the city itself executes any public work it acts ministerially and is liable for any injury resulting from its negligence or maladministration. In defining these two classes of official duties, it is said that ministerial or mandatory duties ''are such as a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment upon the propriety of the act being done,'' while discretionary or judicial duties are ''such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued,'' and that ministerial duties may be delegated while duties involving the exercise of discretion in the public weal cannot: 43 C. J., p. 713. The Standard Dictionary sets out one of the meanings of ''ministerial'' as ''subservient or subsidiary; mandatory as opposed to judicial or discretionary; pertaining to an act or duty performed in accordance with legal authority, rather than with regard to propriety, judgment, etc.''

 Regardless of this distinction, the limits of which are admitted to be vague and uncertain, the maintenance and operation of the water-tank which exploded and caused the death of decedent was not the performance of a ministerial duty for which the school district would be liable. Irrespective of what may be the rule in its application to a city or town

when acting in its private or proprietary capacity, or when acting ministerially in the performance of some official duty, the rule ought not to be applied to a school district. It acts wholly as a governmental agency when performing the duties imposed upon it by statute. In the performance of its public duties, the school district is bound to provide a building, and to provide heat, light and water for the pupils, all of which is essential to the maintenance of the school. It obtains no special corporate benefit or peculiar profit from the water so furnished, or from the means by which the water is furnished. We think that the true rule for determining the liability or nonliability is that stated in *Bolster* v. *City of Lawrence,* 225 Mass. 387 (114 N. E. 722, 724, L. R. A. 1917B, 1285), where the court said:

"The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability."

For these reasons, the demurrer to the complaint was properly sustained as to the defendant district.

■ There remains only the question of whether directors of a school district are personally liable for the consequences resulting from the negligent installation on school premises, for school purposes, by an employee of the district employed by them, of a tank without any safety device, which tank, because of the high pressure required for its operation, was liable to explode and cause injury unless such safety device was employed to render its operation safe, and which later did explode and cause the death of a pupil who was lawfully in attendance upon the school at the time of its explosion.

There is no allegation in the complaint that the person employed to install the tank was not competent, nor that the directors, or any of them, were personally present at the time of its installation, or commanded, directed, advised or consented to its installation, without a safety device, or that they failed to exercise proper supervision over the work, or, having knowledge that the tank was negligently installed, failed to use due care to avoid its consequences, or that, in the installation of the tank, they were acting beyond the scope of their authority. In other words, there is no allegation of any personal negligence upon the part of the directors, or any of them. The contention seems to be that, because they were directors of the district and permitted the tank to be operated while in that condition, they are personally liable for the negligent acts and omissions of the persons employed to do the work, although the character of the work was such that it could not be done without availing themselves of the services of others.

■ As we have stated, a school district is a civil division of the state. It is an agency or arm of the state, created by statute to discharge governmental functions delegated to it by the legislative assembly. Its members are the residents of the district, but, in the transaction of its business, it acts through its board of directors, who are elected by the legal voters of the district. The statute provides that the directors, "in their official capacity, shall be known as the district school board, and shall hold such meetings as are necessary to transact the business of their office": Or. L., § 5036. Section 5038 requires the directors, when authorized, to "purchase, lease or build schoolhouses, buy or lease land for school

purposes, furnish schoolhouses with furniture, lights and apparatus," and Section 5043 thereof gives them "entire control of the public schools of their district and the teachers employed therein." They are public officers and representatives of their district. They act gratuitously, and hence are not required to give their entire time in supervising work done for the district, nor does the law contemplate that they shall install tanks for the district, or do any work which, from its nature, can be done only by availing themselves of the services of others. Persons employed to do such work, while selected by the directors, are not the servants of the directors, but are the servants of the district. The relation of master and servant, or of principal and agent, does not exist in such cases, and hence the doctrine of *respondeat superior* does not apply between the directors and such persons.

In *Colby* v. *City of Portland,* 85 Or. 359 (166 Pac. 537), this court, speaking through Mr. Chief Justice McBride, said:

"It is the universal rule that a public officer is not personally liable for the negligence of an inferior officer unless he, having the power of selection, has failed to use ordinary care in the selection."

School directors are entitled to all of the immunities of public agents who are charged with a duty which, from its nature, cannot be exercised without availing themselves of the services of others, and the doctrine of *respondeat superior* does not apply in such cases: *Robertson* v. *Sichel,* 127 U. S. 507 (32 L. Ed. 203, 8 Sup. Ct. Rep. 1286, 1290); *Walsh* v. *Trustees of New York & Brooklyn Bridge,* 96 N. Y. 427; *Herman* v. *Board of Education,* 234 N. Y. 196 (137 N. E. 24, 24 A. L. R. 1065); *Donovan* v. *McAlpine,*

85 N. Y. 185 (39 Am. Rep. 649); *Bowden* v. *Derby,* 97 Me. 536 (55 Atl. 417, 94 Am. St. Rep. 516, 63 L. R. A. 223); *McKenna* v. *Kimball,* 145 Mass. 555 (14 N. E. 789); *Moynihan* v. *Todd,* 188 Mass. 301 (74 N. E. 367, 108 Am. St. Rep. 473); Story on Agency, 321.

In the Robertson case, the court said:

"A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances or negligences, or omissions of duty, of the subagents, or servants or other persons properly employed by or under him, in the discharge of his official duties."

In the Donovan case, the plaintiff, a scholar in a public school, was injured by falling into an excavation carelessly left open in the school yard by workmen in repairing the school building. The repairs had been ordered by the school trustees who acted gratuitously and were under the direction of the superintendent of school buildings. No personal negligence was alleged or shown in any of the defendants. The court, through ANDREWS, J., said:

"Upon this state of facts we think the complaint was properly dismissed. The trustees, in directing the repairs to be made, and in employing workmen for that purpose, were acting within the scope of their authority. They were charged with the safe-keeping of the school property in their ward, and authorized to make needful repairs within certain limits. The employment of workmen for this purpose was necessary, and if they employed competent men, and exercised reasonable supervision over the work, their whole duty as public officers was discharged. They were acting as gratuitous agents of the public, and it could not be expected that they should be personally present at all times during the progress of the work, to supervise the conduct of

the workmen. It was said by BEST, C. J., in *Hall* v. *Smith*, 2 Bing. 156, that no action can be maintained against a man acting gratuitously for the public for the consequence of any act which he was authorized to do, and which, so far as he is concerned, is done with .care and attention, and that such a person is not answerable for the negligent execution of an order properly given; and it was said by NELSON, C. J., in *Bailey* v. *Mayor*, 3 Hill [N. Y.], 538, that if a public officer authorize the doing of an act not within the scope of his authority, or if he be guilty of negligence in the discharge of duties to be performed by himself, he will be held responsible; but not for the misconduct or malfeasance of such persons as he is obliged to employ.''

In *Bowden* v. *Derby, supra*, which was an action against a street commissioner to recover for the negligence of the commissioner in not furnishing the plaintiff, a laborer, with a reasonably safe place in which to work and with reasonably safe tools and appliances with which to do the work, the court said:

''While the defendant was a public officer, the work in which he was engaged was none the less ministerial. It is claimed that the relation existing between the defendant and the plaintiff was that of master and servant; and, if this be the true construction of the facts set forth in the declaration, the defendant is undoubtedly liable under the well recognized principles of law applicable to that relation. In repairing the street and building the wall the defendant was acting solely for the public. He had no interest in the work other than that which arose from the discharge of his duty as a public officer. The nature of that duty was such that he could not perform it alone. It could not be executed without availing himself of the services of others. Not that he was obliged to employ any particular man or men. He had the right to select and discharge the men, the power to determine what work should be done,

and the way and manner in which it should be done. None the less he was compelled to employ men who were paid, not by him, but by the city, who labored, not for his benefit, but for the public. He should not be held liable for the misconduct of those whom he is thus obliged to employ. Such employees are not his servants, and the rule of *respondeat superior* does not apply. *McKenna* v. *Kimball,* 145 Mass. 555 (14 N. E. 789). The foundation of the liability of one person for the acts and negligence of another is found in the doctrine of principal and agent. The fact that the defendant had the right to select and discharge the men whom he was compelled to use might be a good reason why he should be holden to exercise reasonable care in their selection, but we do not think that under the circumstances of this case it is sufficient to establish the fact that the plaintiff was the defendant's servant, and charge him with the onerous consequences which flow from that relation. Few men would be found willing to accept an office whose burdens were so disproportionate to its benefits. Sound public policy forbids that public officers should be held responsible for the negligence of those whom they are obliged to employ in the discharge of their duties in the execution of public works, when such officers are not chargeable with any want of diligence or due care on their part: *Bailey* v. *New York,* 3 Hill, 531 (38 Am. Dec. 669).''

But in the same case the court said:

'' * * He (the street commissioner) is not an insurer, but the laborer has a right to rely, whether the work be public or private, that the man who directs and selects the place, means, manner, and method of his work shall use reasonable care to see that the means and the place are reasonably safe. If the defendant failed in this, it was his own fault, and not that of another, and he cannot shield himself behind the defense that he was a public officer. That plea cannot be interposed to shield him from the consequences of his own negligence. While he need

not answer for another, he must answer for himself. A personal liability attaches to him for his failure to exercise reasonable care in providing safe machinery with which, and a safe place in which, the defendant might work.''

In the *Moynihan* v. *Todd* case, an action against the superintendent of streets for an injury sustained by plaintiffs through his carelessness in causing a rock in the highway to be blasted, pieces of the rock striking plaintiffs, it was held that, if the defendant was personally negligent in causing the rock to be blasted without taking proper precaution for the safety of persons rightfully in the vicinity, a verdict should be rendered against him, but if there was no negligence in blasting the rock, or if it was only negligence of the defendant's agents or servants, he was not liable. In that case the court said:

" * * We are of opinion that the principle which underlies the rule that public officers and other agencies of government are not liable for negligence in the performance of public duties goes no further than to relieve them from liability for nonfeasance, and for the misfeasances of their servants or agents. For a personal act of misfeasance, we are of opinion that a party should be held liable to one injured by it, as well when in the performance of a public duty as when otherwise engaged. We think that the general course of decision in this commonwealth is not in conflict with this view. But for acts of misfeasance of a servant or agent in such cases, there is no liability. This is because the rule *respondeat superior* does not apply.

"There is an exception to the last branch of the rule. Whenever the work is not entirely public, but is in part for profit, or when any element of pecuniary advantage enters into it, there is a liability for the negligent acts of servants. On this ground it was long ago held that a city or town might be liable for

negligent acts of misfeasance done by its servants in the construction or repair of a common sewer: (citing authorities). Another and different class of cases in which there is a liability for the misfeasance of servants or agents is referred to by Chief Justice GRAY in *Hill* v. *Boston,* 122 Mass. 344, 358 (23 Am. Rep. 332), as follows:

" 'If a city or town negligently constructs or maintains the bridges or culverts in a highway across a navigable river, or a natural watercourse, so as to cause the water to flow back upon and injure the land of another, it is liable to an action of tort, to the same extent that any corporation or individual would be liable for doing similar acts: *Anthony* v. *Adams,* 1 Met. [Mass.] 284, 285; *Lawrence* v. *Fairhaven,* 5 Gray [Mass.], 110; *Perry* v. *Worcester,* 6 Gray [Mass.], 544 (66 Am. Dec. 431); *Parker* v. *Lowell,* 11 Gray [Mass.], 353; *Wheeler* v. *Worcester,* 10 Allen [Mass.], 591. So if a city, by its agents, without authority of law, makes or empties a common sewer upon the property of another to his injury, it is liable to him in an action of tort: *Proprietors of Locks and Canals* v. *Lowell,* 7 Gray [Mass.], 223; *Hildreth* v. *Lowell,* 11 Gray, 345; *Haskell* v. *New Bedford,* 108 Mass. 208. But in such cases, the cause of action is not neglect in the performance of a corporate duty, rendering a public work unfit for the purposes for which it is intended, but it is the doing of a wrongful act, causing a direct injury to the property of another, outside of the limits of the public work.' This doctrine was reaffirmed in *Tindley* v. *Salem,* 137 Mass. 171, (50 Am. Rep. 289). And it has been applied in many cases. Its exact limits have not been very clearly defined. Perhaps it includes *Elder* v. *Bemis,* 2 Met. [Mass.] 599, and *Hawks* v. *Charlemont,* 107 Mass. 414, in which the reasons for the decisions were not very plainly stated, but in each of which the negligent act was a trespass causing a direct injury to the plaintiff's property outside of the limits of the highway: (citing authorities)."

 Under these authorities, it is clear that a public officer is immune from liability for the misfeasances or nonfeasances of persons properly employed by him in the discharge of his official duties. A public officer, however, is responsible to a private party for his own negligence or wrongful acts when acting beyond the scope of his authority, or when acting within the scope of his authority if the wrong done is not a violation of a duty which he owes solely to the public. If the duty is solely a duty which the officer owes to the public, then the officer is not subject to the suit of a private party, even though it has resulted in injury to such party. But if the duty is one which the officer owes both to the public and to a private individual, and the private individual is injuriously affected specially, and not as a member of the public, then for such violation the injured party may sue for the wrong done. But, in so far as a public officer executes the authority or performs the functions of government, the exemption of the state for wrong applies to him. See 1 Jaggard on Torts, page 126 et seq., where the author states the principle as follows:

"Private individuals cannot recover damages resulting from conduct violating a duty owed solely to the public and imposed by the state on its executive officers, instrumentalities, or agents. Such damages are the results of a purely public wrong, and therefore are not subject to private action.

"Damages may, however, be recovered against executive public officers—

"(a) For conduct in the course of performance of public duties, provided (1) such conduct violates a duty to an individual, in the performance of which he has a particular interest, even though that duty be also owed to the public; and (2) the complainant suffers some special individual wrong, as distin-

guished from the wrong done the community generally.

"(b) For unauthorized conduct in the course of performance of official duty."

The negligence complained of in the instant case, of installing on the school grounds a tank which was liable to explode for want of a safety device and cause injury to others was not, under the allegations of the complaint, the negligence of the school district, but of the manufacturer of the tank, or of the persons employed to install the same, for which the manufacturer or persons doing the work, and not the directors, who purchased the tank and employed others to install it, may be liable. For these reasons, the demurrer was properly sustained as to the directors of the district.

As to the district itself, we are controlled by the former decisions of this court. The purchase and installation of the tank was a governmental act. The statute makes no distinction between school districts, which are only *quasi* corporations, and, as we think, perform nothing but governmental acts, and cities and towns, which may act either governmentally or in a private or proprietary capacity. Under the former decisions of this court, and despite the statute as we think, municipalities of all classes and kinds named in the statute are exempt from liability when acting governmentally and within the scope of their authority, for their own wrongs and omissions, and for the wrongs and omissions of their subordinates and agents, unless acting ministerially in the doing of the act complained of. In such case, the doctrine of *respondeat superior* does not apply. While acting in their private or proprietary capacity, they are responsible both for their own wrongs and

omissions, and for those of their servants and employees, who, in such case, are acting as their agents, and the doctrine of *respondeat superior* applies. If this were a case of first impression, we would be inclined to follow the reasoning in the case of *Herman* v. *Board of Education,* 234 N. Y. 198 (137 N. E. 24, 24 A. L. R. 1065), and to hold that the statute was intended to make municipal corporations liable for their own negligent acts and omissions, whether acting governmentally or in their private and proprietary capacity. But the law in this state is now too well settled upon that question. The statute, it has been held and we are bound by it, was not intended to have that effect.

For these reasons, the judgment of the lower court sustaining the demurrer as to all of the defendants will be affirmed. It is so ordered. AFFIRMED.

BEAN, J., concurs in the result.

BROWN, J., did not participate.