Argued March 2; affirmed May 17, 1938

# EUGENE SCHOOL DISTRICT No. 4 et al. *v.*
## FISK, County Judge, et al.
### (79 P. (2d) 262)

In Banc.

*L. L. Ray*, District Attorney, of Eugene (Donald Young, Deputy District Attorney, of Eugene, on the brief), for appellants.

*Lawrence T. Harris*, of Eugene (E. R. Bryson, of Eugene, on the brief), for respondents.

ROSSMAN, J. This is an appeal by seven of the eight defendants in this proceeding from a declaratory decree which construes some of the provisions of 1920 Session Laws, Sp. Sess., chapter 38, as amended by 1933 Session Laws, chapter 169. This statute is sometimes spoken of as the state elementary school fund law and is codified as §§ 35-1801 to 35-1804, Oregon Code 1930. It levies a tax of two mills on the dollar upon all taxable property within the state for the support and maintenance of the public elementary schools. This support is given to the schools in addition to whatever other provisions for their support are provided by law. The act declares that the fund created by the tax "shall be known as the state elementary school fund." The plaintiffs are four school districts of Lane county. The defendants are county officials of that county. One of them, who is the county school superintendent, filed an answer in which he admitted all of the averments of the complaint and joined in the plaintiffs' prayer. According to the complaint, the plaintiffs claim "that said elementary school tax is a state tax which shall be paid by Lane county to each of the plaintiffs in full regardless of whether or not there are any delinquent taxes of any kind whatsoever, and regardless of whether

or not all taxpayers have paid or pay all their respective taxes whatsoever in full''. The defendants, so the complaint alleges, claim "that said elementary school taxes assessed and levied must be apportioned, charged and paid to plaintiffs only in proportion to and as said taxes are actually collected, and that said elementary school tax is not a state tax and that if and when taxes are delinquent all school districts, including plaintiffs, must bear pro rata whatever loss results from such delinquencies.'' The seven defendants who resist the plaintiffs' demands, to whom we shall hereafter refer as the defendants, filed an answer which, in addition to admitting the averments just quoted, alleges: "Though said tax is attempted to be described as a state tax in the act providing for the same, said tax is nevertheless not a state tax but is, in fact, a tax for local elementary public school purposes.'' They contend that the county's duty has been fully performed when it has transferred to the elementary school fund the portion of the tax actually collected.

The difficulties which finally culminated in the institution of this proceeding began in the year 1930 when many delinquencies in the payment of taxes developed. The plaintiffs, however, have received in full the taxes levied for the school year 1934-1935 and all previous years under the authority of this act, but have not received the entire amount of taxes levied after that year. According to both the complaint and the answer, the following tax delinquencies exist in Lane county:

| | |
|---|---|
| For the year 1930 | $ 47,382.13 |
| For the year 1931 | 98,153.73 |
| For the year 1932 | 244,291.77 |
| For the year 1933 | 375,744.32 |
| For the year 1934 | 447,004.54 |
| For the year 1935 | 435,427.57 |
| For the year 1936 | 356,535.31 |

For the school year 1935-1936 there were unpaid to the plaintiffs the following parts of the levied elementary school tax:

Eugene School District No. 4 ................\$15,211.92
Cottage Grove School District No. 45 .. 3,156.00
Junction City School District No. 69 .. 1,683.20
Springfield School District No. 19 ........ 3,156.00

The total sum due to the plaintiffs for all arrearages since 1934-1935 is \$124,864.68.

Not only the plaintiffs, but also the defendants, allege that a dispute exists concerning the interpretation of this statute, and that a declaratory judgment is necessary. For instance, the complaint alleges: "Certain bona fide disputes have arisen between the defendants on the one side and the plaintiffs on the other side in the following, among other particulars * * *." From the answer, we quote: "A controversy exists between the plaintiffs and these answering defendants over said matter, the plaintiffs contending that they should be paid the full amount of said levy regardless of * * *. That a controversy exists between the plaintiffs and these answering defendants as to whether or not the said provisions of §§ 35-1801 to 35-1803, Oregon Code 1930, and acts amendatory thereto, are constitutional. * * * A dispute exists between plaintiffs and these answering defendants as to * * *. Wherefore, these answering defendants join with the plaintiffs in asking for a judgment and decree construing and determining the aforesaid elementary public school tax law * * *."

The plaintiffs prayed for a decree "construing and determining the aforesaid elementary public school tax law and determining and adjudging whether the defendants must pay to the plaintiffs and other school

districts in the county in full the elementary public school taxes levied and apportioned regardless of delinquencies in payment of taxes; and for such other relief as to the court may seem meet and equitable; and that plaintiffs have judgment for costs and disbursements of this proceeding.''

The answer, in addition to joining with the plaintiffs' prayer for a construction of the nature of the tax, prayed for a determination of the defendants' duty in regard to payment of the aforementioned balance of $124,864.68, and asked for a determination of the validity of the statute.

The declaratory decree, referring to the statute, construes the latter as requiring "the levy of a two mill tax for the support and maintenance of elementary schools of the state to be known as the state elementary school fund,'' and declares that "the county court has no discretion as to whether such tax should or should not be levied, for by the terms of the statute itself such tax is levied and the tax so levied is by the plain provisions of the statute a state tax; and it is the duty of the county treasurer on the first day of May and November to credit from the general fund to the state elementary school fund one-half of the tax required to be levied and collected in the county for that year, and it is the duty of the treasurer of Lane county to credit the elementary school fund in full irrespective of whether or not all the taxpayers of Lane county have paid all of their taxes in full, * * *.'' The decree said nothing concerning the defendants' duty in regard to payment of the balance of $124,864.68.

Section 4 of the act referred the measure to the people for enactment or rejection under the referendum. At the election held on May 21, 1920, 110,263

votes were cast in favor of the measure and 39,593 against it.

According to the findings of fact, the attorney general prepared the following ballot title for the act when it was submitted to the voters:

"Submitted by the legislature—State Elementary School Fund Tax—Purpose: To levy a two mill tax upon all taxable property commencing with the year 1920 and annually thereafter, for the support and maintenance of public elementary schools; to credit each county with such tax levied therein against the amount due from the county on state taxes and   *   *   *."

The findings of fact state that the Oregon State Teachers' Association submitted in behalf of the measure an argument which was printed in the Voters' Pamphlet. From it we quote the following:

"Submitted by the secretary-treasurer of the Oregon State Teachers' Association in behalf of State Elementary School Fund Tax Bill   *   *   *   Must have more revenue. In addition to more money for teachers' wages, the schools must pay more for maintenance, repairs, building, etc. Many school districts have reached the limit of special, local taxation, and can not do more, however willing, under the present school laws. The proposed two-mill state tax will bring relief to such districts.   *   *   *   A two-mill state tax will place all of the property of the county back of the education of every child. The education of every child, regardless of residence, is a proper charge against every citizen, regardless of residence. Were there no emergency today in the schools, this measure is timely for the reason that Oregon is one of only seven states which do not provide state revenue in addition to interest received from the irreducible school fund, in support of schools. The percentage of school revenue provided from state sources in Oregon is 5.5. If the proposed two-mill tax is approved, it will raise Oregon's percentage of state school tax to 28, based on last year's revenues   *   *   *.   The tax

is to be levied in 1920, thus becoming available in 1921. Every county will receive the full amount of taxes raised on the property of the county  *  *  *.''

The argument urged an affirmative vote. No other argument was submitted.

From appellants' (defendants') brief, we now quote:

''Particular attention is called to the fact that appellants' answer denied that the levy made under the state elementary school fund law is a state tax. This position was abandoned at the hearing before the trial court. We there conceded, as we do now, that it is a state tax; but we contend that it is not the kind of a state tax which creates the relationship of debtor and creditor between the county and the state, or the county and its school districts.''

The appellants' attack upon the statute is epitomized in the following taken from their brief:

''1. The State Elementary School Fund Law (§§ 35-1801 to 35-1803, inclusive, Oregon Code 1930) does not create a relationship of debtor and creditor between the county and state in regard to the tax thereby levied;

''2. The State Elementary School Fund Law does not provide for the county paying over taxes collected on levies made thereunder until they have been paid to the county by taxpayers;

''3. The Local Budget Law (§§ 69-1101 to 69-1115, Oregon Code 1930, and § 69-1117, Oregon Code Supplement 1935) prohibits the county from making up any deficiencies in the State Elementary School Fund caused by failure of taxpayers to pay the levies made thereunder in full by drawing the same from any other fund;

''4. The provisions of the Local Budget Law, being a later act than the State Elementary School Fund Law, are controlling over the terms of the earlier act.

"5. Section 3, Article IX, of the Oregon Constitution prohibits the spending of money received by taxation for one purpose for any other purpose;

"6. Sections 10 and 11 of Article XI of the Oregon Constitution prohibit Lane County from borrowing more than $5,000.00 with which to pay existing deficiencies in the State Elementary School Fund in that County;

"7. Section 11 of Article II of the Oregon Constitution prohibits Lane County from increasing its tax levy by more than six per cent to raise funds for paying existing deficiencies in the State Elementary School Fund in that County;

"8. The doctrine of estoppel should be applied to any effort of the State of Oregon or of respondents or other school districts to recover from Lane County any deficiency in the State Elementary School Fund tax in that County caused by the failure of taxpayers to pay such tax; and

"9. The State Elementary School Fund Law (§§ 35-1801 to 35-1803, inclusive, Oregon Code 1930) is unconstitutional."

It will be observed from the foregoing that the plaintiffs contend that the statute under consideration imposes a state tax and that it renders the county a debtor to the amount of the tax levied, not merely to the extent of the tax collected. Upon the other hand, while the defendants admit that the tax imposed "is a state tax" they deny that it imposes upon the county a debt to the extent of the tax levied. They contend that in the collection of the tax the county acts merely as the agent of the school districts and that the latter must be content with whatever portion of the levied tax is collected.

Section 69-745, Oregon Code 1930, as amended by 1933 Session Laws, chapter 446, § 15, follows:

"On or before the first day of April in each year the several county treasurers of the state shall pay over to the state treasurer, in gold and silver coin, one-quarter of the amount of state taxes charged to their respective counties; and in similar manner shall pay over one-quarter of such taxes on or before the first day of July and one-quarter on or before the first day of October in such year; and on or before the thirty-first day of December in each year the said county treasurers shall pay over the remainder of the money so charged to their respective counties, without any deduction for any cause whatever, which tax shall be paid out of the first moneys collected and paid into the county treasury over which the county has control; * * *"

In *Northrup v. Hoyt*, 31 Or. 524 (49 P. 754), this court determined the nature of a state tax and the relationship arising out of the imposition of one. From that carefully prepared decision, the following is quoted:

"The general scheme of assessing and collecting taxes in this state creates the relation of debtor and creditor between the county and state for the amount of state revenue apportioned to the county, so that it becomes a liability against the county in its corporate capacity, payable out of the funds received for general county purposes, the same as any other obligation: State v. Baker County, 24 Or. 141 (33 Pac. 530). And all taxes levied for state and county purposes, when collected, belong to the county, and the state becomes a preferred creditor to the amount of the state revenue apportioned to it. So that while, for convenience, the rate of taxation included in the general county levy for the special purpose of raising money with which to pay the county's obligation to the state is designated as a state tax in the law and upon the county records, it is, in fact, a county tax levied for county purposes. The state does not deal with the individual taxpayer, but its revenue is apportioned to, and collected from,

the various counties in their corporate capacity, in proportion to the taxable property in each, and is payable by the county, whether collected from the tax-payer or not; * * *"

At the time that decision was announced § 2813 of Hill's Code was the statutory enactment which regulated the payment of state taxes by county treasurers to the state treasurer. As revised, it became § 69-745, Oregon Code 1930. The following is quoted from § 2813, Hill's Code:

"On or before the first Monday of February in each year the several county treasurers in this state shall pay over to the state treasurer, in gold and silver coin, the amount of state taxes charged to their respective counties, which tax shall be paid out of the first of such moneys collected and paid in to the county treasurer; provided, however, that so far as the time of payment to the state treasurer is concerned, the same shall not apply to the county treasurers of the counties of * * *."

From the above it is evident that if the two-mill tax imposed by the act is a state tax, the proceeds derived from the levy become county funds and the state becomes a preferred creditor of the county in the amount of the tax levied—not merely to the extent of the sum collected.

The defendants' contentions demand a further analysis of the act. As we have already stated, § 35-1801, being § 1 of the act, provides that the fund created "shall be known as the State Elementary School Fund." Section 35-1802 requires that "the county shall receive credit upon the amount of state taxes required to be paid by such county each year to the amount of said state tax hereby levied." It will be observed that this section, after referring to the general state tax, speaks of the tax imposed by

this act as "said state tax." Section 35-1803 provides that on the first Monday in May and at other suitable times "the county school superintendent shall make an apportionment of the entire state elementary school fund created by this act then in the county treasury." Thus, the act refers to this tax as a state tax, and consistently refers to the fund created by it as "the state elementary school fund." Having increased the state tax by the amount of this two-mill levy, the above-quoted provision is a logical one which provides that the county shall receive credit "upon the amount of state taxes required to be paid by such county each year to the amount of said state tax hereby levied."

We have quoted the ballot title prepared by the attorney general which entitled the act "State Elementary School Fund tax" and have also quoted from the argument submitted in behalf of the act in the Voters' Pamphlet which referred to the act as "State Elementary School Fund Tax Bill." This argument stated: "The proposed two-mill state tax will bring relief" to districts which lacked needed income. It added that "a two-mill state tax will place all of the property of the county back of the education of every child," and declared that Oregon is one of seven states "which do not provide state revenue in addition to * * *" for the support of the elementary schools. Portions of the argument which we have not quoted insisted that state revenue of the kind proposed by this act is necessary for the welfare of the elementary schools.

The codifier of our laws entitled § 35-1801 thus: "Elementary School Fund—State Tax Levy." The State Tax Commission in performing the duties imposed upon it by § 69-431, Oregon Code 1930, as amended by 1933 Session Laws, chapter 446, and by

§§ 69-432 and 69-433, Oregon Code 1930, construed the act under consideration as imposing a state tax. Therefore, in determining the amount of revenue necessary for state purposes, it included the tax imposed by this act. The certificates, which the commission filed with the secretary of state (§ 69-432), and the copies of which the latter sent to the county clerks (§ 69-433) took into consideration this tax.

■■ We believe that we are entitled to use all of the above facts in construing the nature of the tax imposed by this act. In *Turnidge v. Thompson*, 89 Or. 637 (175 P. 281), this court, in referring to the ballot title of a measure submitted to the people under the initiative, stated:

"Since every act must have a title expressing the subject-matter, the title necessarily becomes a part of the act and offers valuable help in construing the act and determining the legislative intent."

■ Therefore, we are justified in using the ballot title of the present act as a means of determining the meaning of the latter. In *Superior Oil Syndicate v. Handley*, 99 Or. 146 (195 P. 159), this court stated:

"In determining the meaning of a statute, the particular mischief which it was designed to remedy and the history of the period and of the act itself may be considered."

It will be recalled that the argument submitted in behalf of this act in the Voters' Pamphlet stated that Oregon was one of seven states in the union which had provided no state tax for the support of its elementary schools and that the purpose of the proposed law was to change that situation.

The argument continued:

"A two mill state tax will place all of the property of the county back of the education of every child."

■ In *Kelsey v. Norblad,* 136 Or. 76 (298 P. 199), *Portland v. Welch,* 126 Or. 293 (269 P. 868), and *Twohy Bros. v. Ochoco Irrigation District,* 108 Or. 1 (210 P. 873, 216 P. 189), this court declared that the contemporaneous construction of a statute by officials charged with its administration may be considered by courts called upon to construe the same act. Therefore, the aforementioned construction placed upon the act by the State Tax Commission may be considered by us in construing it.

■ Article VIII, § 3, Oregon Constitution, provides: "The legislative assembly shall provide by law for the establishment of a uniform and general system of common schools."

The other four sections of this article create the office of superintendent of public instruction, and make provision for a common school fund and its distribution among the several counties of the state. Thus, the constitution of our state, in recognition of the fact that an indispensable essential of a democracy is an educated citizenry, enjoins upon the legislature the duty to establish "a uniform and general system of common schools." The school districts to which the proceeds of this tax are apportionable by the county school superintendent (§ 35-1803) are state agencies: *Antin v. Union High School Dist. No. 2,* 130 Or. 461 (280 P. 664, 66 A. L. R. 1271); *Vestal v. Pickering,* 125 Or. 553 (267 P. 821); *Carlson v. Portland Ry. L. & P. Co.,* 121 Or. 519 (254 P. 809). Therefore, payment to the district is tantamount to payment to the state. Article IX, § 2, Oregon Constitution, grants the legislature authority to raise revenue "to defray the expenses of the state." The bookkeeping shortcut whereby remittance to the state treasurer, and from the latter to the local school

district, is avoided, and the fund is credited by the county treasurer directly to "the State Elementary School Fund of his county" for apportionment by the county school superintendent to the local school districts, does not indicate that the proceeds of the tax are used for something other than state purposes.

■ The act before us, therefore, refers to the tax which it imposes as a state tax and the fund which it proposes to create as the State Elementary School Fund. The act itself provides that when the county treasurer credits the fund with the amount of "the tax required by this act to be levied and collected in his county," the latter "shall receive credit upon the amount of state taxes" in that amount of money. Further, we have seen that the ballot title of this measure and the argument submitted in its behalf are consistent only with a belief that the act imposed a state tax of the kind commonly known by that name. We have also seen that the officials charged with the administration of this statute have construed it as imposing a state tax which rendered the state a preferred creditor of the county to the full amount of the tax levied. These circumstances are highly persuasive that the tax imposed by this act is a state tax, no different in kind from any other state taxes. It would be anomalous to give the county credit upon the amount of its state taxes for a sum greater than it had actually paid, and yet that would be the result if the county is entitled to credit for the amount of the tax levied but is required to remit only the amount actually collected. Our review of the aforementioned constitutional provision was intended to indicate that payment to the school district was, in fact, payment to the state. Payment to an agent, at the principal's direction, is payment to the principal. The defendants' suggestions that this

levy, unlike the ones made under the exercise of the powers granted by §§ 69-431 and 69-432, Oregon Code 1930, is a direct levy, and that the act provides for no penalty, have not been overlooked. It is true that the levy can be spoken of as a direct levy, but whether it is such or not, it is, nevertheless, made for state purposes. That fact, rather than the directness or indirectness of the levy, is the material point. Merely because the needs are known and the legislature itself fixes the amount of the levy instead of having the tax commission do so, is an insufficient reason, in our opinion, for treating this part of the state tax in a manner different from any other part. The absence of a penalty is not of controlling importance. A penalty is a spur, and a spur is only one means of getting at a result. The rules of procedure afford other means for compelling neglectful counties to perform their duties. In short, the defendants construe this as a state-wide tax rather than as a state tax. But the act itself does not so state; it labels the tax as a state tax, and, as we have seen, levies it in behalf of one of the state's important agencies.

In plain words, as the defendants concede, the act describes the tax imposed by this statute as a state tax. Every provision of the statute is in harmony with the conception that the act imposes a state tax which creates the state a preferred creditor of the county to the extent of the tax levy. From the very outset the statute has been construed by all who have been concerned with it as imposing a tax of the kind just mentioned. It is our opinion that the tax levied by this statute is a state tax and that its purpose is to create a preferred credit in favor of the state and against the county to the extent of the tax levied.

The contention that this act violates provisions of the Oregon Constitution is based upon three grounds: (a) The school districts which maintain the public schools are, according to the defendants, local municipal corporations, and, therefore, Article IX, § 2, Oregon Constitution, which provides that "the legislative assembly shall provide for raising revenue sufficient to defray the expenses of the state for each fiscal year" does not authorize the levy of a tax in favor of the school districts; (b) since the two mill tax under consideration is a continuing levy, and since Article IX, § 2, just quoted, speaks of "expenses for the fiscal year" and Article IV, § 10, Oregon Constitution, provides for a biennial session of the legislature, a continuing appropriation is indirectly prohibited by these constitutional provisions; and (c) the act fails to provide for distribution in the same manner as Article VIII requires for the common school fund.

We have already stated that the school districts are subordinate agencies of the state, performing the duties of the state in maintaining the public schools. It is, therefore, our belief that the first of these three contentions is without merit. In support of their second contention, the defendants cite *State ex rel. Owen v. Donald*, 160 Wis. 21 (151 N. W. 331), which we, however, do not believe sustains their contention. Oregon has long employed the principle of continuing appropriations. See 1915 Session Laws, chapter 122. Section 35-5201, Oregon Code 1930, which, apparently, had its inception with 1913 Session Laws, chapters 132 and 136, provides a continuing levy for the use of the Oregon State College, the University of Oregon and the normal schools. The validity of this statute was sustained in *Smith v. Patterson*, 130 Or. 73 (279 P. 271).

Section 18-306, Oregon Code 1930, provides a continuing levy of a tax for the maintenance of the several county fairs. Nineteen Twenty-one Session Laws, chapter 201, § 19, levied an annual tax for the purposes of the World War Veterans State Aid Commission. The validity of that enactment was recognized in *Boyd v. Olcott*, 102 Or. 327 (202 P. 431). The act under consideration is subject to repeal at any time. It is our belief that acts of this character are not violative of constitutional provisions upon which the defendants rely and which are cited in a preceding paragraph.

The contention that this act fails to provide for distribution of the fund in the same manner as Article VIII, § 4, of the Constitution, we believe, is without merit. That section of our constitution is applicable only to the common school fund of which the state elementary school fund is not a part. In our opinion, the act under consideration is valid.

The remaining contentions concerning this enactment, which are summarized in a preceding paragraph, concern the defendants' duty in regard to payment of the balance of $124,864.68. The county possessed on January 1, 1937, $7,624.09 available for payment upon the balance. The plaintiffs have given no indication of an intention to demand payment of the balance, and apparently are willing to be patient. They ask neither for judgment nor for any declaratory decree concerning their right to payment. Their brief states that they have applied all money received from this tax upon the oldest unpaid account. Apart from this reference to the balance, their brief's only other mention of it is the following: "If the statute is to be construed as contended for by the plaintiffs then the matter of how to enforce the payment by the defendants is quite

another question. The construction of the state elementary public school fund law should not and can not be affected in the slightest degree by whether or not difficulty may be encountered by the defendants in now laying hands upon sufficient funds with which to fulfill the obligations imposed upon them by the statute.'' The defendants ask for a declaratory decree concerning their duty in regard to payment of the balance, but seem to believe that it should take the form of a suggestion concerning the source of revenue. Their answer, after mentioning several possible sources and dwelling upon legal obstacles which stand in the way of reaching them, alleges insufficient facts to enable us to enter a declaratory decree concerning these matters. It is not our duty to enter an advisory decree, and certainly not our duty to act as a financial adviser of the county. Our conclusion that the tax imposed by this statute is a state tax of the character ordinarily denoted by that name, we believe, is sufficient to enable the defendants to perform their duties. They do not indicate that they have experienced any difficulty whatever in making payment to the state upon other parts of the state tax. Their duty in regard to this part is no different.

Since we believe that the declaratory decree is a correct interpretation of the statute, the same must be affirmed. Costs and disbursements will be allowed to neither party.

BEAN, C. J., and BAILEY, BELT and LUSK, JJ., concur.

RAND and KELLY, JJ., took no part in the decision of this case.