Alexander RENNIE and Tessie Rennie,
Appellants,

v.

BELLEVIEW SCHOOL DISTRICT et al.,
Respondents.

No. 56996.

Supreme Court of Missouri,
En Banc.

March 10, 1975.

Rehearing Denied April 14, 1975.

Marvin L. Dinger, Ironton, Donald P. Thomasson, Cape Girardeau, for plaintiffs-appellants.

John A. Schneider, Samuel Richeson, Dearing, Richeson, Roberts & Wegmann, Hillsboro, for defendants-respondents.

DONNELLY, Chief Justice.

This is an action for damages involving the governmental immunity rule.

Plaintiffs are the surviving parents of Larry Rennie, who was nine years of age on August 26, 1968, when he was killed on the playground of defendant school district while playing on a swing set.

Plaintiffs brought suit against the school district; against defendants McKinney, Wallis, Price, Douglas, Sutton, and Thomas (members of the school board); and against Roberts (the Superintendent), Benson (a teacher), and Ruh (a custodian).

A motion for summary judgment was filed in behalf of the school district and the members of the board. On May 3, 1971, the trial court entered an order of summary judgment on behalf of the defendant school district and its board members, holding that on the basis of the pleadings, the depositions, the admissions in the record, and the affidavits, ". . . there is no genuine issue as to any material fact, and that the said defendants are entitled to a judgment as a matter of law."

Plaintiffs appealed to this Court, and the case was heard by the Court en Banc on September 24, 1974.

Plaintiffs assert that the trial court "erred in sustaining the motion for summa-

ry judgment filed by defendants for the reason that the doctrine of sovereign immunity should be abolished by judicial decree." The case of O'Dell et al. v. School District of Independence, Missouri, 521 S. W.2d 403 (Mo. banc 1974), decided concurrently herewith, is controlling on this assertion. In *O'Dell,* supra, we declined to abolish the doctrine of sovereign immunity. Plaintiffs' assertion is without merit.

Plaintiffs next assert that "the doctrine of governmental immunity should not be applied to a school district where the negligent act involves a ministerial duty in connection with a proprietary function of maintaining of playground at the school."

■ It would serve no useful purpose in this case, involving a school district and not a municipality, to enter the maze of the "governmental-proprietary" dichotomy. Cf. Watson v. Kansas City, 499 S.W.2d 515 (Mo. banc 1973). In any event, a school district, in maintaining a playground at school, is functioning as an arm of the State in a governmental capacity.

Plaintiffs finally assert that the school district board members should be held individually liable "because the doctrine of governmental immunity is not applicable to negligent acts of individual school board members constituting nonfeasance and malfeasance while engaged wholly in performing a ministerial function."

In their brief, plaintiffs charge the board members with nonfeasance and malfeasance "in failing to inspect the school premises, failing to provide deceased with a safe playground area, failing to inspect, repair or anchor the swing set, and in permitting and allowing said swing set to remain on the school playground as a death trap throughout the entire summer months and at the start of the fall school term."

In Antin v. Union High School Dist., 130 Or. 461, 280 P. 664, 667 (Or.1929), appears the following:

"There remains only the question of whether directors of a school district are personally liable for the consequences resulting from the negligent installation on school premises, for school purposes, by an employee of the district employed by them, of a tank without any safety device, which tank, because of the high pressure required for its operation, was liable to explode and cause injury, unless such safety device was employed to render its operation safe, and which later did explode and cause the death of a pupil, who was lawfully in attendance upon the school at the time of its explosion.

"There is no allegation in the complaint that the person employed to install the tank was not competent, nor that the directors, or any of them, were personally present at the time of its installation, or commanded, directed, advised, or consented to its installation without a safety device, or that they failed to exercise proper supervision over the work, or, having knowledge that the tank was negligently installed, failed to use due care to avoid its consequences, or that, in the installation of the tank, they were acting beyond the scope of their authority. In other words, there is no allegation of any personal negligence upon the part of the directors, or any of them. The contention seems to be that, because they were directors of the district, and permitted the tank to be operated while in that condition, they are personally liable for the negligent acts and omissions of the persons employed to do the work, although the character of the work was such that it could not be done without availing themselves of the services of others.

"[7] As we have stated, a school district is a civil division of the state. It is an agency or arm of the state, created by statute to discharge governmental functions delegated to it by the Legislative Assembly. Its members are the residents of the district, but, in the transaction of its business, it acts through its board of directors, who are elected by the legal voters of the district. . . .

They are public officers and representatives of their district. They act gratuitously, and hence are not required to give their entire time in supervising work done for the district, nor does the law contemplate that they shall install tanks for the district, or do any work which, from its nature, can be done only by availing themselves of the services of others. Persons employed to do such work, while selected by the directors, are not the servants of the directors, but are the servants of the district. The relation of master and servant, or of principal and agent, does not exist in such cases, and hence the doctrine of respondeat superior does not apply between the directors and such persons."

We consider the result reached in *Antin,* supra, persuasive for the very practical reason that:

"To permit a recovery [against members of school district boards] . . . would be to establish a principle which would paralyze the public service. Competent persons could not be found to fill positions of the kind, if they knew they would be held liable for all the torts and wrongs committed by a large body of subordinates." Robertson v. Sichel, 127 U.S. 507, 515, 8 S.Ct. 1286, 1290, 32 L. Ed. 203 (1888).

█ On the basis of the record in this case, we believe the defendant school board members have shown by unassailable proof that they are entitled to summary judgment as a matter of law.

The judgment is affirmed.

MORGAN, HOLMAN and HENLEY, JJ., concur.

FINCH, J., dissents in separate dissenting opinion filed.

SEILER and BARDGETT, JJ., dissent and concur in separate dissenting opinion of FINCH, J.

FINCH, Judge (dissenting).

For the reasons expressed in my dissenting opinion in O-Dell v. School District of Independence, 521 S.W.2d 403 (Mo. banc 1975), decided concurrently, I respectfully dissent. I would reverse and remand for trial.

James A. Finch, Jr., Judge