In Banc.
This was an action against defendant, H.B. Van Duzer, a member of the state board of highway commissioners of the state of Oregon, for alleged negligence in the performance of his official duties by reason of which it is claimed that plaintiff's intestate, Albert D. Jones, sustained an injury resulting in his death.
The case was put at issue by an answer and a reply thereto, and a jury impanelled to try the case. The administrator was called as the first witness, whereupon defendant objected to any testimony being introduced, upon the ground that the complaint did not state facts sufficient to constitute a cause of action against the defendant. It was agreed that the facts alleged in the answer and admitted by the reply might be considered on said motion. The motion was sustained and the plaintiff agreed to stand on the pleadings as they stood, a judgment was entered dismissing *Page 267 
the case, from which judgment plaintiff appeals. As the judgment on the motion amounts in effect to a judgment in favor of defendant on the pleadings, it seems proper at the risk of prolixity, to give an extended summing up of the pleadings, so far as they relate to the matter here discussed. The complaint proceeds as follows:
 "I
"That at all the times hereinafter mentioned the defendant H.B. Van Duzer was and still is one of the duly appointed, qualified and acting commissioners of the state highway commission of the state of Oregon.
 "II
"That at all the times hereinafter mentioned a certain highway leading from Roseburg in Douglas county to Coos bay was one of the duly established public highways of the state of Oregon under the exclusive management and control of the said state highway commissioners and of said H.B. Van Duzer as one of said commissioners.
 "III
"That at a point about 33 miles west of the city of Roseburg and about 7 miles west of the Camas Valley store the said highway for a considerable distance is very narrow and crooked. That upon the right of said highway there is a precipitous bluff and that upon the left of said highway there is a precipitous drop from the edge of said highway into a gorge about 100 feet deep, and that said highway at said place follows the Coquille river, which is on the left side of the said highway going west.
 "IV
"That previous to March 10, 1926, some slides had occurred on said highway and that two men then and there in the employ of the said state highway commissioners *Page 268 
and this defendant, as one of said commissioners, were engaged in loading dirt in a truck owned and operated by said state highway commissioners and were from time to time backing said truck, after being loaded, diagonally across the said highway and dumping the dirt down said precipitous bank.
 "V
"That on said March 10, 1926, one Albert D. Jones was driving a Studebaker car west on said highway bound for some point west of the point where he was killed as hereinafter alleged.
 "VI
"That a short distance east of the point where said men were loading said truck and backing it across said highway as aforesaid, there is a sharp curve in said highway, which curve pointed in a southerly direction, and a person driving west upon said highway would not be able to see the said truck and the operations that were being carried on with said truck by said men until after he had rounded the apex of the said curve.
 "VII
"That no proper or adequate means were being used by the persons engaged in said work at said time to warn any person driving west upon said highway at said place that any such operations were being carried on or that there was any obstruction to said highway shortly beyond the apex of said curve.
 "VIII
"That the said Albert D. Jones in driving westward toward the said curve had no knowledge that there was any danger beyond said curve and had no knowledge that the said work carried on by said men with said truck was going on at said time.
 "IX
"That the first warning said Albert D. Jones had of any obstruction to said highway and the first warning *Page 269 
he had of any danger to himself in driving upon said highway was when he rounded the apex of said curve and for the first time discovered that the said truck had been loaded with dirt and was then and there backed across said highway in such a way as to render it impossible for said Albert D. Jones to pass said truck on either side thereof.
 "X
"That said Albert D. Jones at said time was driving with due care and at a reasonable rate of speed and that his said car was in good repair and equipped with efficient brakes.
 "XI
"That upon discovering said obstruction in said highway and his peril therefrom he promptly used all reasonable effort to stop his car and prevent a collision with said truck, and that as a result of his said efforts and without any negligence on his part the said car skidded until some part of the car went over the edge of said highway, and that as a consequence said car, with said Albert D. Jones therein, was precipitated down said declivity a distance of 100 feet, and as a result the skull of the said Albert D. Jones was crushed and he was almost instantly killed.
 "XII
"That said state highway commissioners and said H.B. Van Duzer, as one of said commissioners, negligently failed to prescribe regulations and to give orders and instructions to protect persons traveling upon said highway against perils of such character, and negligently failed to make any regulation or give any order or instruction, that while work of this highly dangerous character to travelers on the highway was going on at places where such work could not be seen by persons driving on said highway until very close to the danger, to have a person stationed upon said highway in such a place as to give persons lawfully using said highway, including said Albert D. Jones, *Page 270 
warning that dangerous operations were being carried on and that said highway was obstructed in the manner and at the time hereinbefore set forth.
 "XIII
"That the foreman who was in charge of said work at said place and at other places along the said highway, and who was then and there the servant and employee of the said state highway commissioners, and said defendant, as one of said commissioners, negligently failed to give Albert D. Jones any warning of said operations or of the danger to be apprehended therefrom.
 "XIV
"That on the 9th day of August, 1926, plaintiff was duly appointed the administrator of the estate of Albert D. Jones by the circuit court of Multnomah county, state of Oregon, sitting in probate, and that thereupon he duly qualified as such administrator and that letters of administration upon said estate were duly issued to him by the clerk of said court, and that he ever since has been and still is the duly appointed, qualified and acting administrator of said estate."
The defendant answered, admitting paragraphs I and II of the complaint, alleging want of knowledge or information sufficient to determine the exact point or section in said highway described in paragraph III, and, for that reason, putting plaintiff to proof of the allegation. The answer then proceeds as follows:
"Answering paragraph IV of said complaint, this defendant denies the allegations set out in said paragraph IV, except as hereinafter in this answer affirmatively alleged.
"Answering paragraph V of said complaint, defendant admits that on or about March 10, 1926, one Albert D. Jones was driving a Studebaker car west on said highway, bound for some point west of the *Page 271 
point where he was killed, but, except as herein admitted, defendant denies the said allegations set out in said paragraph V.
"Answering paragraphs VI and VII of said complaint, defendant denies the allegations set out in said paragraphs VI and VII.
"Answering paragraph VIII of said complaint, defendant alleges that he has not sufficient knowledge or information upon which to base a belief with respect to the truth of the allegations set out in said paragraph, and therefore and for that reason denies the same.
"Answering paragraphs IX and X of said complaint, defendant denies the allegations set out in said paragraphs IX and X.
"Answering paragraph XI of said complaint, defendant admits that decedent's car skidded and went over the edge of the highway embankment, and the said car and the said Albert D. Jones were precipitated down a declivity for a distance of approximately 100 feet, and that as a result the skull of the said Albert D. Jones was crushed and he was almost instantly killed, but, except as herein admitted, defendant denies the allegations set out in said paragraph XI.
"Answering paragraphs XII and XIII of said complaint, defendant denies each and every allegation contained and set forth in said paragraphs.
"Answering paragraph XIV of said complaint, defendant alleges that he has not sufficient knowledge or information upon which to found a belief with respect to the truth of the allegations set forth in said paragraph XIV, and therefore and for that reason denies the same.
"Answering paragraph XV of said complaint, defendant denies that the plaintiff, as administrator of the estate of said Albert D. Jones, or in any other manner or respect, has been damaged in the sum of $7,500 or in any other sum by reason of any facts or things alleged in said complaint, or at all, and denies that the plaintiff is entitled to judgment against the defendant in said sum of $7,500 or any other sum. *Page 272 
"Except as herein admitted or hereinafter affirmatively alleged, defendant denies each and every allegation in said complaint."
Then follows a further and separate answer and defense, which in part is as follows:
 "I
"That under and by virtue of the provisions of chapter 237, General Laws of Oregon, 1917, there was created a state highway commission, consisting of three members to be appointed by the governor, the powers and duties of which said commission are defined in said act; that thereafter the governor of the state of Oregon appointed the members of said commission, and from time to time there has been appointed by the governor successors to the personnel of said original commission, and that during the times mentioned in the said complaint said highway commission consisted of the defendant, H.B. Van Duzer, Wm. Duby and W.H. Malone, and that Wm. Duby was during the times mentioned in said complaint the chairman of said commission; that prior to entering upon their duties as said commission the said Wm. Duby, H.B. Van Duzer and W.H. Malone, qualified as required by law, and furnished and filed their respective bonds with the secretary of state and duly organized as is required by law, and elected Wm. Duby as chairman of the commission; that immediately after the organization of said original commission and prior to entering upon any of the proceedings and prior to the discharge of any of its duties the said commission appointed a state highway engineer as required by law, who immediately thereafter qualified and entered upon the discharge of his duties as by law required and the said commission was during all the times mentioned in said complaint organized as by law required.
 "II
"That the said Wm. Duby, H.B. Van Duzer and W.H. Malone, as said state highway commission, *Page 273 
appointed Roy A. Klein, who is a competent civil engineer and qualified by technical training, as well as by a practical construction experience in highway work, as state highway engineer, and that the said Roy A. Klein before entering upon the discharge of his duties executed a good and sufficient bond in the sum required by law, which bond was approved by the commission and filed in the office of the secretary of state, and said commission employed as assistants to said engineer other persons who are likewise competent civil engineers and qualified by technical training, as well as by practical construction experience in highway work, and said commission charged the said engineer and his said assistants with the responsibility, duty and work of supervising and directing highway construction and maintenance.
 "III
"That on the 10th day of March, 1926, the state highway department was engaged in the removal of some earth, rock and other material which had slid from the mountainside onto a section of the Coos Bay-Roseburg State highway, the exact point on said highway from which said slide material was being removed being at engineer's station No. 213.70 in Douglas county, Oregon; that there were engaged in the removal of said materials men who were in the employ of the state highway commission and were under the immediate supervision and control of said state highway engineer and his subordinates.
 "IV
"That said men who were removing said slide materials employed in connection with said work a truck, upon which truck the material was loaded at the point on said highway where said material had fallen, then said truck was backed to a convenient point on said highway where the said material was dumped or cast over the side of the fill or roadbed, and was used for widening said roadbed; that in dumping said material it became and was necessary, because of the abrupt *Page 274 
or precipitous embankment, which embankment was skirted by the Middle fork of the Coquille river approximately 100 feet below the surface of said roadbed, to back the truck across said road to the edge of the fill or embankment and then by elevating the truck body, dump the load from the rear of the truck.
 "V
"That prior to the commencement of the removal of said slide material the engineer in charge of said work, pursuant to orders and instructions from the state highway engineer, placed and maintained during all of the said operations at points approximately 250 feet distant on each side of said operations, warning signs, which said warning signs consisted of a red flag 18 inches by 18 inches in size, securely fastened to a staff, which staff was firmly fixed in the ground, and in addition thereto there was erected a metal disc about 24 inches in diameter, securely fastened to an iron staff, which staff was firmly planted or fixed in the ground, and upon which disc there were printed in plain white letters approximately 5 inches by 5 inches in size, on a bright red background, the words `Men at Work'; that said warning signs were placed on both sides of said slide where said work was being done, and were so placed as to be plainly seen by drivers of vehicles approaching said point."
The reply admitted paragraphs I, II, III and IV of the further and separate answer and defense, except it denied the allegations in regard to the placing and maintenance of the warning signs. It also denied paragraph VIII of the separate answer, which is as follows:
"That the accumulation of earth, rock and other material on said highway as a result of said slide caused and constituted an emergency and made it necessary for the highway department to employ prompt and effective methods for the removal of such material so as to reopen said highway to the public; *Page 275 
that the methods employed for the removal of such material were the usual and customary methods generally employed in handling and doing such work."
Other allegations of the answer and reply, not being here material, are omitted.
This case is the first attempt to hold the state highway commission, or any member of that body, liable in an action of tort arising out of the conditions involving the building or maintenance of any public highway under its jurisdiction. It had under its jurisdiction, at the time of the accident, which was the occasion of this action, a system of highways aggregating in the neighborhood of 4,000 miles, some completed, some under construction, and a comparatively small mileage yet awaiting active operation. The members of the state highway commission were chosen from different parts of the state, and the general duties of the board were defined and enjoined by law. They are state officers of a high grade charged with the duty of selecting the routes and laying plans for the construction, maintenance and repair of thousands of miles of highway involving the expenditure of millions of dollars of the state finances. The law never contemplated that the board, or any member of it, should be at the place where work was being prosecuted and personally superintend the manner in which it was being done. The details of the work were necessarily in the hands of subordinates and the law provides for such subordinates. In fact, the very first duty imposed on the commission, after providing for their qualification and giving a bond, is found in § 4430, Or. L., which requires them, after electing a chairman, to appoint a state highway engineer "who shall be a competent civil engineer and *Page 276 
qualified by a technical training as well as practical construction experience in highway work." Realizing that not even a highway engineer could personally be present at every place where construction or repair work on the proposed 4,000 miles of highway work was to be performed, another provision of the same section requires the commission to "employ such clerks, officers and assistants" to said engineer as might be necessary, and requires said clerks, assistants and officers to "take the prescribed oath of office" before entering upon their duties, thus impliedly treating the whole body of assistants, et cetera, as officers in the highway department.
The whole tenor of the highway act, so far as it relates to immediate physical and personal supervision of work on the ground, seems to commit the supervision of such work to the engineer and his assistants. The commission locates and plans the work in a general way, the engineer and other subordinates supervise the work, and on this branch of the case the textbooks and decisions are practically unanimous in holding that public officers are responsible only for their own misfeasance and negligence, and not for the negligence of those who are employed under them, if they have employed persons of suitable skill. The rule is thus stated in Story on Agency (9th Ed.), § 321, as follows:
"The rule, which we have been considering, that where persons are acting as public agents, they are responsible only for their own misfeasances and negligence, and (as we have seen) not for the misfeasances and negligences of those who are employed under them, if they have employed persons of suitable skill and ability, and have not cooperated in or authorized the wrong, is not confined to public officers, or agents of the government, properly so called, in a strict legal *Page 277 
sense; but it equally applies to other public officers or agents, engaged in the public service, or acting for public objects, whether their appointments emanate from particular public bodies, or are derived from general laws, and whether those objects are of a local or of a general nature. For, if the doctrine of respondeat superior were applied to such agencies, it would operate as a serious discouragement to persons who perform public functions, many of which are rendered gratuitously, and all of which are highly important to the public interest. In this respect, their case is distinguishable from that of persons acting for their own benefit, or employing others for their own benefit."
To the same effect see Mechem's Public Offices and Officers, sections 789 and 790, which read as follows:
"§ 789. Public Officer of Government Not Liable for Acts of His Official Subordinates. It is well settled as a general rule that public officers of the government, in the performance of their public functions, are not liable to third persons, either for the misfeasances or positive wrongs, or for the nonfeasances, negligences or omissions of duty of their official subordinates.
"This immunity rests upon obvious considerations of public policy, the necessities of the public service and the perplexities and embarrassments of a contrary doctrine.
"These official subordinates are themselves public officers, though of an inferior grade, and are directly liable, in those cases in which any such public officer is liable, for their own defaults. They are not infrequently appointed directly by the governmental power, and are removable only at its pleasure, but even in those cases in which they are appointed and removed by their immediate official superior, the latter is not liable.
"§ 790. Same Subject — Exceptions to This Rule. But this general rule is subject to certain exceptions, *Page 278 
important to be borne in mind and as well settled as the rule itself. Thus the superior officer will be liable, (1) where, being charged with the duty of employing or retaining his subordinates, he negligently or wilfully employs or retains unfit or improper persons; or, (2) where being charged with the duty to see that they are appointed, or qualified in a proper manner, he negligently or wilfully fails to require of them the due conformity to the prescribed regulations; or (3) where he so carelessly or negligently oversees, conducts or carries on the business of his office as to furnish the opportunity for the default; or (4) and a fortiori, where he has directed, authorized or cooperated in the wrong."
In this state the authorities are very fully summed up and considered in Antin v. Union H.S. Dist. No. 2 of ClatsopCounty, 130 Or. 461 (280 P. 664), which is in accord with the authorities above quoted, and in which the court quotes with approval excerpts from the case of Donovan v. McAlpin, 85 N.Y. 185
(39 Am. Rep. 649); Bowden v. Derby, 97 Me. 536
(55 A. 417, 63 L.R.A. 223, 94 Am. St. Rep. 516), and McKenna v.Kimball, 145 Mass. 555 (14 N.E. 789), as follows:
"In the Donovan Case, the plaintiff, a scholar in a public school, was injured by falling into an excavation carelessly left open in the school yard by workmen in repairing the school building. The repairs had been ordered by the school trustees, who acted gratuitously and were under the direction of the superintendent of school buildings. No personal negligence was alleged or shown in any of the defendants. The court, through Andrews, J., said: `Upon this state of facts we think the complaint was properly dismissed. The trustees, in directing the repairs to be made, and in employing workmen for that purpose, were acting within the scope of their authority. They were charged with the safekeeping of the school property in their ward, and authorized to make needful repairs within certain *Page 279 
limits. The employment of workmen for this purpose was necessary, and if they employed competent men, and exercised reasonable supervision over the work, their whole duty as public officers was discharged. They were acting as gratuitous agents of the public, and it could not be expected that they should be personally present at all times during the progress of the work, to supervise the conduct of the workmen. It was said by Best, C.J., in Hall v. Smith, 2 Bing. 156, that no action can be maintained against a man acting gratuitously for the public, for the consequence of any act which he was authorized to do, and which, so far as he is concerned, is done with care and attention, and that such a person is not answerable for the negligent execution of an order properly given; and it was said by Nelson, C.J., in Bailey v The Mayor, 3 Hill (N.Y.) 538 (38 Am. Dec. 669), that if a public officer authorize the doing of an act not within the scope of his authority, or if he be guilty of negligence in the discharge of duties to be performed by himself, he will be held responsible; but not for the misconduct or malfeasance of such persons as he is obliged to employ.'
"In Bowden v. Derby, supra, which was an action against a street commissioner to recover for the negligence of the commissioner in not furnishing the plaintiff, a laborer, with a reasonably safe place in which to work and with reasonably safe tools and appliances with which to do the work, the court said: `While the defendant was a public officer, the work in which he was engaged was none the less ministerial. It is claimed that the relation existing between the defendant and the plaintiff was that of master and servant; and, if this be the true construction of the facts set forth in the declaration, the defendant is undoubtedly liable under the well-recognized principles of law applicable to that relation. In repairing the street and building the wall the defendant was acting solely for the public. He had no interest in the work other than that which arose from the discharge of his duty as a public officer. The nature of that duty was such that *Page 280 
he could not perform it alone. It could not be executed without availing himself of the services of others. Not that he was obliged to employ any particular man or men. He had the right to select and discharge the men, the power to determine what work should be done, and the way and manner in which it should be done. None the less he was compelled to employ men who were paid, not by him, but by the city, who labored, not for his benefit, but for the public. He should not be held liable for the misconduct of those whom he is thus obliged to employ. Such employees are not his servants, and the rule of respondeat superior does not apply. McKenna v. Kimball, 145 Mass. 555, (14 N.E. 789). The foundation of the liability of one person for the acts and negligence of another is found in the doctrine of principal and agent. The fact that the defendant had the right to select and discharge the men whom he was compelled to use might be a good reason why he should be holden to exercise reasonable care in their selection, but we do not think that under the circumstances of this case it is sufficient to establish the fact that the plaintiff was the defendant's servant, and charge him with the onerous consequences which flow from that relation. Few men would be found willing to accept an office whose burdens were so disproportionate to its benefits. Sound public policy forbids that public officers should be held responsible for the negligence of those whom they are obliged to employ in the discharge of their duties in the execution of public works, when such officers are not chargeable with any want of diligence or due care on their part. Bailey v. New York, 3 Hill (N.Y.) 531, 38 Am. Dec. 669.'"
In the present case as the pleadings do not allege that the commission was guilty of any negligence in the selection of its subordinates, it may be assumed that such subordinates were competent and skillful. So that, unless there was something done or omitted, which the defendant himself or the commission as such, should have done, there is no cause of action stated in *Page 281 
the complaint. The allegations on this point are found in paragraphs VII and XII of the complaint. Paragraph VII, as will be seen, relates to the failure of the persons engaged in said work (evidently referring to the workmen who were engaged in removing the slide) to use "adequate" or "proper" means to warn persons driving west on said highway, that any such operations were being carried on, or that there was any obstruction beyond the apex of the curve. The allegation is somewhat indefinite. Taking it most strongly against the pleader, which is the correct rule, it leaves the implication that there were some means taken to give such warning, but that in the opinion of the pleader, they were "improper" and "inadequate"; but, passing this, we come to paragraph XII already set forth in the statement, which is to the effect that said commissioners and this defendant negligently failed to give orders and instructions to protect persons traveling upon said highway (evidently meaning the highway from Roseburg to Coos bay mentioned in the complaint) and negligently failed to give any order or instruction, that while work of this highly dangerous character to travelers on the highway was going on at places where such work could not be seen by persons driving upon such highway until very close to the danger, to have a person stationed upon said highway in such a place as to give persons lawfully using such highway, including said Albert D. Jones, warning that said operations were being carried on, and that said highway was obstructed in the manner and at the time hereinbefore set forth.
In effect, this pleading would require of the commission to be constructively present at the scene of the slide, and, under penalty of damages, see that the precautions *Page 282 
suggested by the pleader were carried out. There is no allegation that either the commission knew of the slide, or the condition of the road, or had an opportunity to know, or to make any special regulation in regard to it. There is no charge that it had failed to make regulations in regard to all slides and obstructions, and it is obvious that obstructions of that character and of almost any character require precautions varying in character according to the nature of the obstruction and condition of the road in the locality, and, to confine the precautions to any fixed rule, would be like requiring a physician to prescribe the same remedy for every disease without having an opportunity for diagnosis. The writer never drove a car a hundred miles in his life, but he has traveled many thousand miles in automobiles driven by others, and he is able to suggest to drivers one rule that will save many mishaps, and it is this: "When you are driving around a blind curve, always keep your car under control." If drivers will do this, their administrator will seldom be in court for damages.
Many interesting points are presented for discussion here, but we are satisfied that this complaint does not state facts sufficient to constitute a cause of action against the defendant and the judgment of the circuit court is affirmed. *Page 283