COLDWATER et al., Appellants, v. STATE HIGHWAY COMMISSION et al., Respondents.

No. 8516

Submitted September 11, 1945. Decided October 23, 1945.

162 Pac. (2d) 772

Mr. Stanley R. Foot, of Helena, for appellants.

Mr. William A. Brown, Special Asst. Atty. Gen., for respondent State Highway Commission.

Mr. R. V. Bottomly, Atty. Gen., Mr. Fred Lay, 1st Asst. Atty. Gen., and Messrs. Weir, Clift & Bennett, of Helena, for respondents Hartford Accident & Indemnity Co., Fireman's Fund Indemnity Co., and Lee M. Ford.

MR. JUSTICE CHEADLE delivered the opinion of the court.

Action for damages arising out of the death of Henrietta Coldwater as the result of the skidding from a state highway of an automobile in which she was a passenger, allegedly caused

by the defective, rough and slippery condition of such highway and absence of signs warning motorists of such dangerous condition.

The action was filed originally in the District Court of Lewis and Clark County, and thereafter transferred to Park County.

Of the thirteen defendants named in the complaint, as amended, only six appeared. So far as the record discloses the other seven were not served, and defaults were not entered against them.

On May 20, 1943, the defendant State Highway Commission filed general and special demurrers to the second amended complaint, as did the defendants Walter W. Phillips and John M. Wheeler. The special demurrers are grounded on lack of jurisdiction of the defendants or the cause of action, misjoinder of parties defendant, and improperly united causes of action.

On July 12, 1943, the demurrers of these defendants were sustained, "upon the ground that complaint as against said demurring defendants does not state a cause of action." The trial court appears thus to have acted only upon the general demurrers. No further pleading having been filed within the prescribed time, judgment of dismissal as to the defendants above named was entered on August 16, 1943.

During February, 1944, three separate general and special demurrers to the second amended complaint were filed by the defendants Hartford Accident & Indemnity Company, Lee M. Ford, and Fireman's Fund Indemnity Company, the special demurrers being grounded upon misjoinder of parties defendant and improperly united causes of action. Thereafter these general and special demurrers were sustained, and the plaintiff having failed to further plead within the prescribed time, judgment of dismissal as to the three last-mentioned defendants was entered on June 19, 1944.

As above noted, the defendants affected by this appeal are State Highway Commission, Walter W. Phillips, John M. Wheeler, Lee M. Ford, Hartford Accident & Indemnity Company, and Fireman's Fund Indemnity Company. The two

named corporations are alleged to be sureties on the official bonds of the defendants Lee M. Ford and John M. Wheeler, respectively, as members of the State Highway Commission.

While the caption of the complaint does not so designate them, the complaint alleges that at all of the times mentioned the defendants Lee M. Ford, Walter W. Phillips and John M. Wheeler were the duly appointed, qualified and acting members of the State Highway Commission of the state of Montana. Judgment is asked against them individually and against the State Highway Commission.

The material allegations of the complaint are as follows: A public highway extending through Belgrade, Montana, is a part of a system of primary or interstate highways designated by the state and the Highway Commission as a state highway, constructed with federal assistance. The individual defendants, as members of the Highway Commission, voluntarily maintained and operated a division of maintenance and control, for the purpose of maintaining said highway. That ''it was the ministerial duty of the said defendants, having voluntarily assumed the obligation of maintaining said highway, to see that the said highway was kept in proper and reasonable state of repair and to prevent the obstruction of the free passage and use of the said highway, and in the repair and maintenance of said highway to erect or cause to be erected and maintained suitable and sufficient warning signs as might be reasonably necessary on and along the said highway to warn the travelling public of the dangerous or unsafe sections thereof, and to exercise reasonable care in the maintenance, operation and control of said highway, so that it would be in a reasonably safe condition for public travel.'' Said defendants under authority vested in them employed a state highway engineer, a maintenance engineer, and a district maintenance engineer, under whose direction a maintenance employee was charged with the duty of patrolling such highway and maintaining same in repair. The defendants were charged with the duty of formulating necessary rules and regulations for the proper maintenance of such highway and of

taking steps to warn the public of dangerous and unsafe portions thereof. It was the duty of the defendants to repair any such dangerous or unsafe conditions of which they had knowledge, and to place or cause to be placed signs warning of such conditions. ''It was the duty of * * * defendants to exercise reasonable care and diligence to avoid creating any slippery, dangerous or unsafe condition on the highway by placing or causing oil to be placed on the surface thereof which would render the same slippery and dangerous and unsafe for use by the travelling public.''

That defendants, at some time prior to April 30, 1939, covered the surface of the highway with oil for the purpose of sealing the same, knowing that such application would make the highway slippery and dangerous for vehicles when made wet by snow or rain, by reason of the fact that the oil applied was unsuitable for use on roads, becoming exceedingly slippery when wet. On and prior to the date mentioned the said highway to the west of and extending through Belgrade was in a dangerous and defective condition in that its surface was rough, uneven and corrugated to such an extent, ''as would throw automobiles out of control that came upon the same, driven by persons without knowledge of the unsafe condition thereof.'' That for a period of time prior to said date sufficient to permit repairs, the defendants knew, or by the exercise of reasonable diligence should have known, of such defective condition, ''and that the drivers of vehicles proceeding over the same might lost [lose] control of such vehicles by reason of the peculiarly rough, corduroy, corrugated and uneven surface of the said highway, so that said vehicles might overturn, * * * and that by reason of the application of said oil to the surface of said highway as aforesaid, said highway was exceedingly slippery and dangerous when wet so that vehicles travelling over the same in wet weather might skid from said highway and overturn, causing injury to the occupants thereof; that nevertheless said defendants * * * negligently failed and omitted to repair said highway * * * and failed and omitted to provide by rules and regulations

theretofore adopted, that when a road becomes dangerous and unsafe for use, warning signs should be stationed at dangerous sections of highway, * * * and negligently failed and omitted to place or cause warning signs to be placed upon the aforesaid section of highway prior to the time of the accident hereinafter described, so that approaching motorists would be advised of the unsafe condition * * *.''.

That on April 30, 1939, at about 8:45 o'clock p. m., Henrietta Coldwater was riding in an automobile being driven in an easterly direction upon the described section of the highway toward Belgrade. Rain was then falling and the surface of the highway was wet. That the automobile was proceeding at a reasonable rate of speed, and both passenger and driver were without knowledge of the condition complained of. As ''said automobile * * * came upon said dangerous, defective part of said highway * * * the same was jolted out of control * * * by reason of the rough and corduroy surface thereof and skidded from said highway and overturned, causing the injury to Henrietta Coldwater hereinafter mentioned; that each of the aforesaid negligent acts and omissions of said defendants was a proximate cause of the overturning of said automobile.''

As above noted, the general demurrers of the defendants State Highway Commission, Phillips and Wheeler were sustained. Both the general and special demurrers of the defendants Ford and the surety companies were sustained. Because of the conclusion reached, we find it unnecessary to review the action of the trial court as to the special demurrers.

The questions presented are whether the complaint states facts sufficient to establish the liability of the State Highway Commission, or the individual liability of the members of that commission.

The State Highway Commission was created and is governed by the provisions of Chapter 156 of the Political Code, being section 1783 to 1800, Revised Codes, 1935. Section 1783 created the commission, to consist of commissioners to be appointed by the Governor, and gives it power to appoint an engineer and

other employees. Section 1784 requires the engineer to perform such duties as may be imposed upon him by the commission, to take and file the constitutional oath of office, and to give bond in such sum as may be determined by the commission.

Sections 1785 and 1786 prescribe certain duties, including the preparation and submission of periodic reports, the compilation of statistics, and investigation and determination of road building methods.

Section 1788 requires the highway commission to formulate all rules and regulations necessary for the government of the highway commission, and authorizes the commission to make rules necessary for compliance with federal acts granting aid for public highways. This section also requires the commission, in conjunction with boards of county commissioners, to formulate necessary rules and regulations for the construction, repair, maintenance and marking of state highways and bridges, and authorizes local supervision thereof.

Section 1789 authorizes employment and compensation of office and field help.

Section 1790 prescribes the manner of letting contracts for work on state highways and requires the execution by contractors to the state of Montana of a bond conditioned for the faithful discharge of such contracts.

Section 1792 authorizes the commission to organize and operate a division of maintenance and control, and by co-operation with the several boards of county commissioners, if necessary, to maintain state highways constructed by the state and such additional mileage deemed necessary by the commission.

Section 1793 provides that the commission, "shall cause to be erected and maintained such standard guides and warning signs as it may deem necessary on and along state highways."

Section 1797 confers authority in the commission "to exercise the power of eminent domain in the name of the state" in the acquisition of rights of way for highway purposes.

Sections 1799 and 1800 provide for handling of the state highway funds and trust funds by the state treasurer, and the pay-

ments of accounts and expenditures by the state treasurer upon warrants drawn by the state auditor.

It is thus apparent that the only mandatory duty imposed upon the commission with reference to the construction, repair, maintenance and marking of highways is found in section 1788, which requires only the formulation of necessary rules and regulations for the accomplishment of these purposes, and in section 1793, requiring the commission to cause to be erected and maintained such standard guides and warning signs as it may deem necessary. The law contains no provision for liability of the commission or of the individual members thereof for damages by reason of the manner of the performance of their duties. Neither does the law, expressly or by implication, provide that the commission may sue or be sued. The only right of action prescribed is that of eminent domain, which must, under section 1797, be brought in the name of the state.

Appellants assert that, for two reasons, the defendant commission, in the actions and omissions complained of, was acting in a proprietary and not in a governmental capacity. First, they say, while the statutes require, as a governmental duty, the formulation of rules and regulations for the repair and maintenance of state highways, there is nothing in the law requiring the application to the highway of any specified surfacing material, particularly oil; that when the defendants undertook to apply to the highway surface an oil which was not adaptable for that purpose, they did so solely in a proprietary capacity, and did not perform any governmental duty imposed upon them. This contention we believe to be without merit. The method of carrying out the duties of the commission imposed by the law with reference to the maintenance and repair of highways, by necessary inference, is left to the discretion of the commission. Thus, the legislature expressly provided that such function should be performed under rules and regulations formulated by the commission.

Secondly, appellants argue that the commission's attempt to promote tourist travel by erecting historical signs and by

distributing literature advertising the state constitutes its activities a business which adds to the state's prosperity, and, therefore, almost wholly proprietary in nature; further, that the system of state highways is operated on a toll basis, the toll being collected in the form of a gasoline tax. But there can be no doubt that the accomplished purpose of the Highway Commission Act was the creation of an agency of the state for the accomplishment of the governmental function of establishment, construction and maintenance of a system of highways within the state for the use, convenience and benefit of the public. Appellants rely upon the decisions of this court in Johnson v. City of Billings, 101 Mont. 462, 54 Pac. (2d) 579, and Jacoby v. Chouteau County, 112 Mont. 70, 112 Pac. (2d) 1068, as authority for the contention that in the performance of duties imposed by the Act the commission acted, not in a governmental, but in a proprietary, capacity. We think these cases do not support such contention, in cases where, as here, the defendants acted in accordance with the mandate of the statute to keep the highway in repair and for no other purpose. In the Johnson case [101 Mont. 462, 54 Pac. (2d) 583] this court, by inference, but without deciding the question, expressed the opinion that in the performance of similar duties pursuant to and within statutory mandate, county commissioners act in a governmental capacity. It was there said:

"Conceding, for the purpose of this opinion, that ordinarily the repair of, at least certain of, our highways constitutes a governmental function, it is not so with respect to the particular situation presented here. The city and county joined in the construction of a drain ditch for the benefit of both; a project which might have been initiated by the city for the preservation of the health and safety of the people (section 5039, subd. 15, Rev. Codes 1921), or by a county for the preservation of its roads, for which purpose the county might have been included in a drain district and treated in the same manner as a private corporation (State ex rel. Valley Center Drain District v. Board of Com'rs of Big Horn County, 100 Mont. 581, 51 Pac. (2d)

74

635), but were acting each for the other as well as for itself, and the work being done on the road at the time of the accident was in progress, not under the mandate of the statute requiring counties to keep roads in repair, but as a necessary and proper part of the drain project thus jointly being completed. Clearly, in so repairing the road, the city and county were each acting in the proprietary, and not in the governmental, capacity. * * *

"In repairing the highway, the county was acting voluntarily and in its proprietary capacity, and not under the mandate of the statute to keep the highways in repair."

In the Jacoby case, in which damages were allowed against a county for injuries resulting from the operation of a ferry, the rule adopted in the Johnson case was affirmed. There this court said [112 Mont. 70, 112 Pac. (2d) 1070] : "We adhere to the rule announced in the Johnson case to the general effect that a county in the performance of proprietary, as distinguished from governmental, functions is liable for damages due to its negligence."

We hold that in the performance of duties imposed upon it ▮ by law the commission was acting in a governmental capacity. Grande v. Casson, 50 Ariz. 397, 72 Pac. (2d) 676; Youmans v. Thornton, 31 Idaho 10, 168 Pac. 1141; Lickert v. Harp, 213 Wis. 614, 252 N. W. 296; Conway v. State Consolidated Pub. Co., 57 Ariz. 162, 112 Pac. (2d) 218; Longstreet v. Mecosta County, 228 Mich. 542, 200 N. W. 248; Robertson v. Monroe, 79 N. H. 336, 109 A. 495.

We have already held that the commission is an agency of the state, created for the general purpose of the establishment, construction and maintenance of a system of state highways. 39 C. J. S., Highways, sec. 157, p. 1110; Elliot, Roads and Streets, 4th Ed., Vol. 2, p. 1000; Conway v. State Consolidated Pub. Co., supra; Grande v. Casson, supra; Campbell Building Co. v. State Road Commission, 95 Utah 242, 70 Pac. (2d) 857. It is an arm or branch of the state. It is beyond question in this jurisdiction that the state cannot be sued without its consent. Heiser v. Severy, Mont., 158 Pac. (2d) 501, and cases cited; Mills v.

Stewart, 76 Mont. 429, 247 Pac. 332, 47 A. L. R. 424. The state's immunity from suit extends to the boards, commissions and agencies through which the state must act. Heiser v. Severy, supra, and cases cited; Berman v. Minnesota State Agricultural Society, 93 Minn. 125, 100 N. W. 732; Wilson v. Louisiana Purchase Exposition Commission, 133 Iowa 586, 110 N. W. 1045, 119 Am. St. Rep. 646; Barker v. Hufty Rock Asphalt Co., 136 Kan. 834, 18 Pac. (2d) 568; United Contracting Co. v. Duby, 134 Or. 1, 292 Pac. 309; New Mexico State Highway Commission v. Bible, 38 N. M. 372, 34 Pac. (2d) 295; Dougherty v. Vidal, 37 N. M. 256, 21 Pac. (2d) 90. Since any judgment against the commission could only be satisfied from state funds, such judgment would, in effect, be against the state. For these reasons we hold that the demurrer of the defendant State Highway Commission was properly sustained.

The remaining question is whether the complaint states a cause of action against the individual members of the commission and their sureties. This must be determined by the allegations of fact and not by conclusions of the pleader.

At the outset it must be borne in mind that the legislature has not expressly provided for liability of the commission or the individual members thereof, as in the case of county commissioners by sections 1627 and 4520, Revised Codes, 1935.

The acts of negligence complained of are, (1) the application of unsuitable oil to the surface of the highway, resulting in a slippery condition when wet; (2) failure to repair the rough, uneven and corrugated condition of the section of highway in question; (3) failure of the commission to formulate rules and regulations for the placing of warning signs; and (4) failure to place or cause to be placed signs warning motorists of the unsafe and dangerous condition of the highway. It is not alleged that the defendants were acting beyond the scope of their legally imposed duties; rather, that they either omitted the performance of such duties, or performed same in a negligent manner. Neither is it alleged that these defendants had actual notice of the conditions complained of, the complaint alleging that they

knew, or in the exercise of reasonable care and diligence should have known, of such conditions.

We have held that in carrying out the mandates of the Highway Act the commission acts in a governmental capacity, and in this instance acted within the scope of the duties imposed by that Act. Under such circumstances, if the commission itself cannot be held liable, neither may the individual members thereof, in the absence of legislative sanction, no showing of actual willful or malicious negligence on their part being made. As stated, the method of the performance of the duties imposed with reference to the construction, maintenance and repair of roads is discretionary. The crux of the complaint is negligence in failure to repair the highway and to place proper warning signs. No malice or corruption is imputed to defendants. We think that at most the acts and omissions complained of indicate possible errors of judgment in formulating rules for the maintenance and repair of highways and in the erection of proper warning signs. It is true that the complaint directly alleges that the commissioners and the state engineer ''failed and omitted to provide by rules and regulations theretofore adopted, that when a road becomes dangerous and unsafe for use, warning signs should be stationed at dangerous sections of highway * * *.'' The duty of formulating rules and regulations is thus expressed in section 1788: ''* * * and the state highway commission in conjunction with the board of county commissioners shall also formulate necessary rules and regulations for the construction, repair, maintenance and marking of state highways and bridges, and may provide for local supervision in such cases.'' What rules and regulations might be necessary under this provision appear to be left to the discretion of the commission. Likewise the placing of warning signs is a matter within the commission's discretion. Section 1793 requires that the commission ''shall cause to be erected and maintained such standard guides and warning signs as it may deem necessary on and along state highways.''

In the treatise on Highways in C. J. S., 40 C. J. S., sec. 251,

p. 285, it is said that in some jurisdictions highway officers charged with the duty of keeping highways in repair are held liable for injuries caused by their negligent failure to make repairs, on the ground that such duty is ministerial in its nature. We think the better rule, however, is stated in the same section, as follows: ''In other jurisdictions, however, it is held that, except where the statute so provides, highway officers and the officers of the municipality whose duty it is to look after the roads are not personally liable for injuries arising from defective highways, or for mere nonfeasance or failure to perform an official duty, unless, as is held in some jurisdictions, they are guilty of willful or malicious negligence, * * * such decisions being based on the fact * * * that the duty in respect to repairs is quasi judicial and discretionary rather than ministerial, and is a duty owed to the public generally rather than to individuals. It has been said that statutes imposing on county commissioners the obligation to keep highways in repair cast on them a public duty as a board, such duty inhering in their official status, and do not render them individually liable for breach thereof.'' See, also, Binkley v. Hughes, 168 Tenn. 86, 73 S. W. (2d) 1111; Wadsworth v. Town of Middleton, 94 Conn. 435, 109 A. 246; Daniels v. Hathaway, 65 Vt. 247, 26 A. 970, 21 L. R. A. 377; Waldron v. Berry, 51 N. H. 136; Gresty v. Darby, 146 Kan. 63, 68 Pac. (2d) 649; Lowe v. Storozyszyn, 183 Okl. 471, 83 Pac. (2d) 170, and cases cited.

In the same section it is said: ''In the absence of knowledge or of facts charging them with knowledge of the defective conditions causing the damage, highway officials are not personally liable therefor, and where they do not participate in performance of work on a highway and they exercise due care in the selection of persons to carry it on, highway officials may not be held responsible in the absence of actual knowledge of negligence.'' See, also, Laird v. Berthelote, 63 Mont. 122, 206 Pac. 445; Becker v. Chapple, 72 Mont. 199, 232 Pac. 538; Strickfaden v. Greencreek Highway Dist., 42 Idaho 738, 248 Pac. 456, 49 A. L. R. 1057. As noted above the complaint does not

allege actual notice of the defective conditions by the defendants; neither does it allege facts charging them with notice thereof.

The State Highway Act does not contemplate actual, physical supervision by the members of the commission of repair and maintenance of roads. So far as they are concerned, membership is a part-time job, undertaken by citizens with a sense of duty toward the state, doubtless in many instances at personal sacrifice. The law contemplates that state highways be established under their general supervision, and expressly provides for a state engineer, who "shall perform any acts or duties relating to the office of the highway commission, which said commission may impose upon him" and such other office and field help as it may deem necessary. As is said in Corliss v. Van Duzer, 132 Or. 265, 285 Pac. 253, 256, with reference to the duties of members of a highway commission governed by statutes very similar to ours: "The members of the state highway commission were chosen from different parts of the state, and the general duties of the board were defined and enjoined by law. They are state officials of a high grade, charged with the duty of selecting the routes and laying plans for the construction, maintenance, and repair of thousands of miles of highways, involving the expenditure of millions of dollars of the state finances. The law never contemplated that the board, or any member of it, should be at the place where work was being prosecuted and personally superintend the manner in which it was being done. The details of the work were necessarily in the hands of subordinates, and the law provides for such subordinates * * *."

We think that, compelled as they are by physical necessity and statutory mandate to appoint subordinates to perform the actual work and to supervise it, the members of the commission cannot, in the absence of misfeasance or actual negligence on their part, be held liable for the negligence of such subordinates, especially in the absence of actual notice. The doctrine of respondeat superior is not applicable. As stated by the Oregon Supreme Court in Corliss v. Van Duzer, supra: "The whole

tenor of the Highway Act, so far as it relates to immediate physical and personal supervision of work on the ground, seems to commit the supervision of such work to the engineer and his assistants. The commission locates and plans the work in a general way, the engineer and other subordinates supervise the work, and on this branch of the case the text-books and decisions are practically unanimous in holding that public officers are responsible only for their own misfeasance and negligence, and not for the negligence of those who are employed under them, if they have employed persons of suitable skill.'' See, also, Laird v. Berthelote, supra; Shannon v. Fleishhacker, Cal. App., 2 Pac. (2d) 835; Fernelius v. Pierce, Cal. App., 123 Pac. (2d) 910; Hilton v. Oliver, 204 Cal. 535, 269 Pac. 425, 61 A. L. R. 297.

There is, perhaps, merit in appellant's contention that the rule of immunity of the sovereign from liability to the individual is out-moded, harsh and unjust. Nevertheless it is firmly established under the common law and beyond the power of this court to repudiate. Should the people see fit they have the power, through the legislature, to consent that the state may be sued, and to determine under what circumstances the state and its agencies shall become answerable to the individual. If reform in this respect is desirable, it is a matter for the legislature, not for the courts.

The trial court correctly sustained the general demurrers of the appearing defendants to the second amended complaint. The judgments are accordingly affirmed.

Mr. Chief Justice Johnson and Associate Justice Morris concur.

Mr. Justice Adair.

I concur in the result but not in all that is said in the foregoing opinion.

Mr. Justice Angstman (concurring in part and dissenting in part).

I concur in the conclusion that the Highway Commission, as such, cannot be held liable in court proceedings for the alleged

torts of its members. The rule is of long standing that the King can do no wrong. From that simple statement there grew up the further equally fallacious idea that a state or a nation can do no wrong and hence may not be sued without their consent.

The State of Montana has never given its consent to be sued in court for an alleged tort. The only remedy provided by our laws for such a wrong as against the state is to go before the state board of examiners. Sec. 20 of Art. VII of our constitution makes the board of examiners the tribunal to hear all claims against the state and expressly provides that ''no claim against the state, except for salaries and compensation of officers fixed by law, shall be passed upon by the legislative assembly without first having been considered and acted upon by said board.''

To carry out the constitutional scheme for having claims against the state determined by the state board of examiners, Sec. 242, R. C., was enacted providing for the presentation of such claims to that board. Sec. 243 fixes the time when the board will examine the claims and requires published notice thereof. Sec. 244 provides for hearing evidence on the claims and making a report to the legislative assembly of facts and recommendations. This plan of deciding claims against the state has not proved adequate so far as the claimant is concerned. Claims are transmitted by the state board of examiners to the legislative assembly or to some legislative committee, without recommendation and without any hearing thereon by the board of examiners. If the legislature pays attention to the constitutional command that it shall pass upon no claim which has not been previously considered and acted upon by the board, it must automatically decline relief and that is what it usually does and the claimant remains remediless.

The state not having given its consent to be sued in court on a claim founded upon the alleged torts of its officers, I agree with the conclusion that the trial court properly sustained the demurrer as to the defendant commission.

I disagree with my associates so far as the question of the individual liability of the members is concerned. I agree that

there are many cases supporting the conclusion that the members of the board are not personally liable for nonfeasance. But even for nonfeasance the weight of authority holds there is liability (see note in 40 A. L. R. 36) and Montana is listed along with those cases supporting the majority view. But whatever the rule may be for nonfeasance, nearly all courts hold that there is personal liability for misfeasance of public officers. The difference between nonfeasance and misfeasance is pointed out in Binkley v. Hughes, 168 Tenn. 86, 73 S. W. (2d) 1111, 1112 where the court said: "Such commissioners are personally liable to a third party where the latter is injured as a result of some act of misfeasance committed by them."

The Supreme Court of Minnesota, in Stevens v. North States Motor, 161 Minn. 345, 201 N. W. 435, 436, 40 A. L. R. 36, after declaring that there is no personal liability on the members of the highway board for nonfeasance, distinguished the prior case of Tholkes v. Decock, 125 Minn. 507, 147 N. W. 648, 52 L. R. A., N. S., 142, by saying:

"The case of Tholkes v. Decock, supra, relied upon by appellant, was a case of misfeasance on the part of the overseer in repairing a culvert in a public highway. It was not a case of nonfeasance like unto the case at bar. There, the overseer undertook to repair the culvert, and while so doing, went beyond his duty in that he left a pitfall in the culvert overnight, an independent tort for which he was personally liable, the same as would any other person, in no way connected with the highway, have been. The leaving of such a mantrap was no part of the overseer's duty. True, it was done while the overseer was in the act of repairing the culvert, but the act of leaving the pitfall open and unprotected overnight was not a part of his official duties. It constituted misfeasance as distinguished from nonfeasance, and therein lies a distinction between that case and the one at bar.

"The act complained of in that case was, not the removal of the culvert, but the leaving of a mantrap in its stead without proper danger warnings."

The case of Palmer v. Marceille, 106 Vt. 500, 175 A. 31, 32, states the rule of liability for misfeasance as follows: ''The fact that Marceille was a public employee, performing a governmental act, does not exempt him from personal liability for negligent misfeasance. This principle has been repeatedly recognized. In Florio v. Schmolze, 101 N. J. L. 535, 129 A. 470, 40 A. L. R. 1353, the defendant, the driver of a fire truck, while going to a fire, negligently collided with the plaintiff's horse and wagon. The court said, 129 A. 470, at page 471: 'He (the defendant) must answer for his negligence, though in the performance of a public duty, in the same manner as if he were an individual in private life and had committed a wrong to the injury of another. The servant of the municipality is required to perform his duty in a proper and careful manner, and when he negligently fails to do so, and in the performance of his duty negligently injures another, his official cloak cannot properly be permitted to shield him against answering for his wrongful act to him who has suffered injury thereby.' And again at pages 472, 473 of 129 A.: 'We think that a sound public policy requires that public officers and employees shall be held accountable for their negligent acts in the performance of their official duties, to those who suffer injury by reason of their misconduct. Public office or employment should not be made a shield to protect careless public officials from the consequences of their misfeasances in the performance of their public duties.' In Moynihan v. Todd, 188 Mass. 301, 74 N. E. 367, 108 Am. St. Rep. 473, the action was predicated upon the alleged negligent blasting of a rock in the highway, by which the plaintiff was injured, and the evidence tended to support the claim. The defendant was the superintendent of streets and directed the operation. He claimed exemption from liability because of his public employment and the governmental nature of the work. The court said, page 305 of 188 Mass., 74 N. E. 367, 369: 'We are of opinion that the principle which underlies the rule that public officers and other agencies of government are not liable for negligence in the performance of public duties goes no

further than to relieve them from liability for nonfeasance and for the misfeasances of their servants or agents. For a personal act of misfeasance we are of opinion that a party should be held liable to one injured by it as well when in the performance of a public duty as when otherwise engaged.' '' See, also, 40 C. J. S., Highways, sec. 251; 25 Am. Jur. Highways, Sec. 604.

Does the complaint allege an act of misfeasance on the part of the members of the board?

In par. XVI of the second amended complaint, it is alleged: ''That at all of the times herein mentioned the aforesaid section of highway had an oiled surface; that at some time prior to April 30, 1939, the exact date being to plaintiff unknown, but being within the knowledge of the defendants, said defendants Lee M. Ford, Walter W. Phillips, John M. Wheeler, D. A. McKinnon, Scott V. Hart, Fred M. Brown, and John Doe covered the oiled surface of said highway with oil to seal the surface of the same and prevent moisture from penetrating the same, although said defendants then and there knew that the application of such oil to the surface of said highway would cause said highway to be exceedingly slippery and dangerous for use by vehicular traffic when made wet by snow or rain so that vehicles proceeding upon the same might slip therefrom and overturn, by reason of the fact that the oil so applied was unsuitable for use as road oil, in that the same was exceedingly slippery when wet.''

It was further alleged that, ''each of said defendants, Lee M. Ford, Walter W. Phillips, John M. Wheeler, D. A. McKinnon and Scott V. Hart knew, and the defendants Fred M. Brown and John Doe knew, or in the exercise of reasonable care and diligence should have known, that by reason of the application of said oil to the surface of said highway as aforesaid, said highway was exceedingly slippery and dangerous for use when wet so that vehicles traveling over the same in wet weather might skid from said highway and overturn, causing injury to the occupants thereof.''

These allegations were followed by a further allegation that

the same defendants failed to place warning signs upon this highway. The allegations are sufficient to charge misfeasance and, in my opinion, are sufficient to state a cause of action against the individual members of the board.

Discussion of the doctrine of respondeat superior has no proper place at this stage of the case. Consideration of that question now is premature.

The allegations are that the members of the board themselves performed the acts of misfeasance. If the proof should show that the named defendants did not perform the acts complained of and did not direct or countenance the tortious acts (see Lowe v. Storozyszyn, 183 Okl. 471, 83 Pac. (2d) 170), then it will be time enough to consider the doctrine of respondeat superior.

So far as the sufficiency of the complaint is concerned, we must accept the allegations which are well pleaded as true. In other words, I do not say that the members of the board are in fact liable but only that if the allegations are true there is liability. I think the complaint states facts sufficient to constitute a cause of action against the individuals named. This conclusion works no hardship on the members individually be-·cause the legislature apparently contemplated liability in such a case and made provision for an official bond. Sec. 1783, R. C. If there is no liability for misfeasance of the officers then there would seem to be little if any reason for the requirement of an official bond conditioned "for the faithful performance of his duties" as provided in Sec. 1783, R. C.

I think the complaint states facts sufficient to constitute a cause of action against the members of the board individually and against the sureties on their official bonds.