No. 12110

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

JAMES KISH,

Plaintiff and Appellant,

-vs-

MONTANA STATE PRISON and DONALD E.
MICKELSON, et al.,

Defendants and Respondents.

---

Appeal from: District Court of the Third Judicial District,
Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

For Appellant:

Knight, Dahood and Mackay, Anaconda, Montana.
Wade J. Dahood argued, Anaconda, Montana.

For Respondents:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana.
Larry D. Huss argued, Assistant Attorney General,
Helena, Montana.
William Jensen, Assistant Attorney General, appeared,
Helena, Montana.
Corette, Smith and Dean, Butte, Montana.
R. D. Corette, Jr. argued, Butte, Montana.

---

Submitted: November 28, 1972

Decided: JAN 2 5 1973

Filed: JAN 2 5 1973

*Thomas J. Kearney*
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

The plaintiff filed this case in Powell County district court for severe and permanent injuries. He alleged he had been damaged by permanent wage loss in the sum of $150,000, hospital and medical specials which at the time of summary judgment exceeded $50,000, and general damages in the sum of $700,000. A motion for summary judgment was granted in favor of defendants and from this ruling plaintiff appeals.

On September 19, 1967, a forest fire was burning about twenty miles north of Deer Lodge, Montana, in what is called the Gold Creek area. The United States Forest Service took control of fighting the fire, and in order to contain the blaze, several bulldozers were leased and borrowed from the local area. This equipment was necessary for the construction of fire lines. The fire lines were constructed and controlled by employees of the United States Forest Service and the drivers of the bulldozers were under the direct and exclusive supervision of the forest service. One of these bulldozers was leased from Mickelson, who owned and operated a construction business in Deer Lodge, Montana. Mickelson supplied an operator for the bulldozer, one Charles Fiske; however, while constructing the fire lines, Fiske was under the control and was paid by the United States Forest Service. Another bull- dozer was loaned to the fire fighting operation by the Montana State Prison. This loan was at the request of the United States Forest Service; however, certain prison land was adjacent to the fire area and the State Prison had an interest in protecting this grazing and timberland. In order to operate the bulldozer, the prison provided a guard and two prisoner-operators to run the equipment.

James Kish, a member of a fire crew from Butte, was on the fire line several days after the bulldozers had constructed the fire line. Alleg- edly, an uprooted tree was left standing and was allowed to lean against another tree. When plaintiff Kish was in the area, a wind caused the tree to fall on him. Kish, 45 years of age at the time of the accident, was paralyzed from the waist down as a result of the accident. Two years later

Kish died. Plaintiff contended the uprooted tree was negligently left standing by defendants. This is the basis for the lawsuit.

Two issues are presented for review. First, was the trial court correct in ruling that Montana State Prison was immune from suit by reason of the doctrine of sovereign immunity? Second, was the trial court correct in ruling that the loaned servant doctrine applied as to release the defendants from liability?

The trial court was correct in holding Montana State Prison was immune from suit by reason of the doctrine of sovereign immunity. This doctrine was initially treated by this Court in Mills v. Stewart, 76 Mont. 429, 436, 247 P. 332, wherein the Court stated:

> " * * * But the state is a public corporation, and out of considerations of public policy the doctrine of <u>respondeat superior</u> does not apply to it unless assumed voluntarily. In other words, the state is not liable for the negligent acts of its agents unless through the legislative department of government it assumes such liability. (Citing authority)."

Since 1968 the Court has several times considered the issue of sovereign immunity. In Longpre v. School District No. 2, 151 Mont. 345, 347, 443 P.2d 1, the Court stated:

> " * * * And, generally speaking, all public agencies, institutions or political subdivisions of the state partake of this sovereign immunity, at least while performing governmental functions, since, while so engaged, they merely act for the benefit of the state and of the public generally."

In Three Forks v. State Highway, 156 Mont. 392, 398, 480 P.2d 826, the Court noted:

> " * * * But in the absence of a waiver of immunity, the State may not be liable for torts committed while engaged in a purely governmental function. Coldwater v. State Highway Comm'n, 118 Mont. 65, 162 P.2d 722."

As can be seen from this authority, this Court has recognized and applied the doctrine of sovereign immunity. The Montana legislature has also acted to bring formal recognition to the doctrine of sovereign immunity. In 1959 the legislature adopted Chapter 7, Title 83, R.C.M. 1947, dealing with tort

actions against the state. Two sections in this chapter are important to the question before us. Section 83-701, R.C.M. 1947, states in pertinent part:

> "The district courts of the state of Montana shall have exclusive jurisdiction to hear, determine, and render judgment to the extent of the insurance coverage carried by the state of Montana on any claim against the state * * *." (Emphasis supplied).

Section 83-706, R.C.M. 1947, states:

> "Where collectible insurance coverage from any insurer is available to pay on behalf of, or to indemnify, the state of Montana, for any settlement, compromise or judgment under this act, any cause of action shall be subject to the terms and conditions of such policy or policies of insurance applicable; and in such event the state of Montana shall be immune under this act from any claim or demand, including judgments, in excess of such collectible insurance." (Emphasis supplied).

It is interesting that when House Bill 237, Thirty-sixth Legislative Assembly, now Chapter 7, Title 83, R.C.M. 1947, was introduced, the emphasized portion of section 83-701, R.C.M. 1947, was omitted. A senate amendment added that language and it was concurred in by the house of representatives and signed by the Governor. (For the amendment see Senate Journal of the Thirty-sixth Legislative Assembly, page 452.) The Supreme Court in Kaldahl v. St. Highway Comm'n, 158 Mont. 219, 221, 490 P.2d 220, spoke of the purpose of Chapter 7, Title 83:

> "As to legal actions against the state, the 1959 legislature passed Chapter 7, Title 83, R.C.M. 1947-- 'Tort Actions Against State', and in seven sections, sections 83-701 through 83-707, carefully determined how, why, and when the state could be sued in tort action. These legislative enactments recognize tort liability and establish immunity of the state in excess of its collectible insurance. Thus, these statutory provisions provide a remedy against the state under certain circumstances. The legislature has spoken and we are bound by its enactments." (Emphasis supplied).

Other provisions of the Revised Codes of Montana, 1947, speak to the legislative existence of the doctrine of sovereign immunity: Sections 40-4401, 40-4402 and 75-5939, R.C.M. 1947.

The legislature does not perform useless acts. Helena Valley

Irrigation Dist. v. St. Hwy. Comm'n, 150 Mont. 192, 433 P.2d 791. The legislature adopted Chapter 7, Title 83 for a purpose and that purpose was to establish the doctrine of sovereign immunity and to provide certain waivers of that immunity.

Prior to the adoption of Chapter 7, Title 83, the standards for applying the doctrine of sovereign immunity were set forth in Coldwater v. State Highway, 118 Mont. 65, 74, 162 P.2d 772, where the Court stated:

> "We hold that in the performance of duties imposed upon it by law the commission was acting in a governmental capacity."

The Court went on to note:

> "We have already held that the commission is an agency of the state, created for the general purpose of the establishment, construction and maintenance of a system of state highways."

This Court in Coldwater required two conditions precedent to the application of the doctrine of sovereign immunity: (1) that the body involved be an agency of the state, and (2) that the agency of the state be engaged in the performance of duties imposed upon it by law. The Court accepts this test in order to determine whether or not a particular act falls within the purview of the sovereign immunity doctrine.

Both of these conditions precedent are present in the instant situation. The plaintiff has brought suit against the Montana State Prison. Section 80-1401, R.C.M. 1947, provides for the creation of the State Department of Institutions. Section 80-1403, R.C.M. 1947, provides in part:

> "The following institutions are in the state department of institutions:
>
> " * * *
>
> "(3) State Prison * * *."

The Montana State Prison is an agency of the State of Montana.

Plaintiff alleged the construction of the fire line was a proprietary function of the state in contrast to a governmental function; therefore, the doctrine of sovereign immunity does not apply. According to plaintiff, pasturing and raising cattle and conducting logging operations

by the state are proprietary in nature; consequently, the protection of the land used in such a function is also a proprietary act. This Court does not accept this reasoning.

First, pasturing and raising cattle and conducting logging operations by the state are, in fact, governmental functions, and second, the protection of state land, regardless of its use, is a governmental function.

Section 80-1401, R.C.M. 1947, creating the State Department of Institutions, states:

> "The purpose of the legislative assembly in creating a state department of institutions is to utilize at maximum efficiency the resources of state government in a co-ordinated effort to restore the physically or mentally disabled, to rehabilitate the violators of law, * * * to rededicate the resources of the state to the productive independence of its now dependent citizens, and to co-ordinate and apply the principles of modern institutional administration to the institutions of the state." (Emphasis supplied).

The purpose of Montana State Prison is to rehabilitate violators of law through maximum utilization of the resources of state government. The method of accomplishing this goal is set forth by statute. Section 80-1501, R.C.M. 1947, provides in part:

> "The department of institutions may
>
> "(1) Establish industries in institutions which will result in the production or manufacture of goods that may be needed by institutions and other state agencies and that will assist in the rehabilitation of residents in institutions." (Emphasis supplied).

Two of Montana's leading industries are agriculture and timber. What better way to rehabilitate prisoners than to train them to compete in the labor market of this state's leading industries by actual, on-the-job training of the necessary skills to compete? The state is carrying out the duty of rehabilitation imposed upon it by law. This duty is again found in section 80-1901, R.C.M. 1947, which provides:

> "The institution at Deer Lodge is the 'State Prison' and as its primary function provides facilities for the custody, treatment, training and rehabilitation of adult criminal offenders." (Emphasis supplied).

- 6 -

If pasturing and raising cattle and conducting logging opera-
tions, as rehabilitative functions, are governmental functions, then the
protection of the property necessary to carry out those functions is also
a governmental function.

The protection of state land is a governmental function.  Article
XIX, Section 3, Constitution of Montana, states:

> "The legislative assembly shall enact suitable laws
> to prevent the destruction by fire from any cause
> of the grasses and forest upon lands of the state
> or upon lands of the public domain the control of
> which may be conferred by congress upon this state,
> and to otherwise protect the same."

The people of Montana required the legislature to provide for the protec-
tion of state lands from fire and other forms of destruction.  The people
enjoined a further duty upon the State of Montana regarding state lands
in Article XVII, Section 1, Constitution of Montana, which states in part:

> "All lands of the state that have been, or that may
> hereafter be granted to the state by congress, and
> all lands acquired by gift or grant or devise, from
> any person or corporation, shall be public lands
> of the state, and shall be held in trust for the
> people * * *."  (Emphasis supplied).

It is incumbent upon the state, as trustee, to preserve and protect the
corpus of the trust, in this case the land itself.

The legislature, acting on the mandate of the people, did provide
for protection of the lands of the state.  Section 28-109, R.C.M. 1947,
provides in part:

> "Every owner of forest land classified as such by the
> board is hereby required to furnish protection against
> the starting or existence, and to suppress the spread,
> of fire on such land during the full period of each
> forest fire season defined by this act."  (Emphasis
> supplied).

The forest fire season runs from May 1 through September 30 of each year.
See section 28-103, R.C.M. 1947.  The fire in question occurred during
the month of September.

Further duties are imposed upon the various institutions of the
state regarding protection of property under their control.  Section

80-1501, R.C.M. 1947, provides in part:

"The department of institutions may

" * * *

"(5) Provide for the repair and maintenance of property and equipment of institutions by residents of institutions."

The duty to maintain the property is mandatory, the method discretionary. Section 80-1406, R.C.M. 1947, provides in part:

"The warden or superintendents of institutions in the department are responsible for the immediate management and control of their respective institutions * * *."

The duty to maintain and control property of the state is enjoined upon state agencies, both expressly and impliedly. It is only reasonable to state that the protection of the resources and the property of the state is a governmental function. Because here we have a state agency attempting to protect the state's property, we find the Montana State Prison was engaged in a governmental function.

The state has met the tests, both judicial and legislative, and the doctrine of sovereign immunity must be applied. For this reason, the decision of the district court is affirmed.

The second issue is whether or not the trial court was correct in ruling that the loaned servant doctrine applied, so as to release defendants from liability. We affirm the district court's ruling on this issue.

The loaned bulldozer and operator (Montana State Prison inmates and equipment) and the leased bulldozer and operator (Mickelson's bulldozer with Fiske as the operator) were fighting a forest fire under the request and direction of the United States Forest Service. Agents of the United States Forest Service directed all operations of the bulldozers and their drivers. The loaned servant rules this Court established in Lewis v. Potter, 149 Mont. 430, 427 P.2d 306, and in Devaney v. Lawler Corp., 101 Mont. 579, 56 P.2d 746, are controlling. In these two cases the Court established two controlling factors of the loaned servant doctrine. First,

in whose business was the person engaged?  Here, there can be no doubt that the bulldozers and operators were engaged in fire fighting for the United States Forest Service.  Second, under whose control, domination or direction were the bulldozers and operators working?  This Court agrees with the district court that the bulldozers and drivers were under the control, domination and direction of the United States Forest Service through its employees and agents.  For these reasons, plaintiff was correctly barred from asserting a claim against either of defendants.

Chief Justice

We concur:

Associate Justices

- 9 -