No. 12924

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

MISSOULA RURAL FIRE DISTRICT,

Plaintiff and Respondent,

-vs-

CITY OF MISSOULA, et al.,

Defendant and Appellant.

---

Appeal from:  District Court of the Fourth Judicial District,
Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

For Appellant:

Victor Valgenti and Fred C. Root, Missoula, Montana
Victor Valgenti argued, Missoula, Montana

Respondent:

Robert L. Deschamps III, County Attorney, Missoula,
Montana
Harold V. Dye, Deputy County Attorney, argued, Missoula,
Montana
Robert N. Helding argued, Missoula, Montana

---

Submitted:  June 23, 1975

Decided: SEP 2

Filed:

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

Defendant City appeals from adverse judgments entered in the district court, Missoula County, enjoining it from annexing certain properties to the City.

From the record it appears that on July 22, 1974, the City of Missoula (City) adopted a resolution expressing its intention to annex certain lands wholly surrounded by the City's present corporate limits, known as the "Wapikiya area". This area is within the boundaries of the Missoula Rural Fire District (Fire District) which had been in existence for more than ten years prior to the attempted annexation.

On August 26, 1974, the Fire District obtained an order in Missoula district court prohibiting the City from attempting to annex the Wapikiya area.

On September 9, 1974, the City adopted four resolutions to annex four separately described tracts adjacent to the City which form an irregularly shaped block of land known as the "Carline area". This area is also within the Fire District.

The Carline area property owners (property owners) and the Fire District brought separate actions to prevent the annexation of both areas.

On October 10, 1974, the Missoula district court held a hearing, consolidated the cases and entered judgment enjoining the City from annexing either the Wapikiya or the Carline areas and permanently enjoined the City from attempting to annex any lands within the boundaries of the Fire District.

The City separately appealed the district court's order of August 26, 1974, and judgment of October 10, 1974. This Court consolidated the separate appeals for hearing.

This Court is requested to determine (1) whether annexation by a city must follow the procedures set forth in "The

Planned Community Development Act of 1973", sections 11-514 through 11-525, R.C.M. 1947, or may prior annexation procedures be followed; (2) whether a city may annex areas, surrounded by the city or adjacent thereto, which are part of a rural fire district.

The stated purpose of The Planned Community Development Act of 1973 is to "develop a just and equitable system of adding to and increasing cities boundaries" in the state, section 11-515. The legislature "declared as a matter of state policy that current annexation laws and planned methods incorporated in the Montana system are in many cases discriminatory and are causing in many of the Montana cities indiscriminate growth patterns", section 11-515. In this manner the legislature questioned the continuing usefulness of the annexation laws which were in effect at the time of the enactment of the 1973 Act, but did not repeal the prior annexation acts. The legislature did provide a measure of assistance in construction of the 1973 Act in connection with prior annexation laws by providing in section 11-525, in pertinent part:

> "In so far as the provisions of this act are inconsistent with the provisions of any other law, the provisions of this act shall be controlling. The method of annexation authorized by this act shall be construed as supplemental to and independent from other methods of annexation authorized by state law."

The City asserts the final sentence of section 11-525, allows a Montana municipality to annex areas pursuant to the earlier annexation law contained in section 11-403, R.C.M. 1947. Section 11-403(1) provides a specific summary annexation procedure for the annexation of land that is wholly surrounded by a city. The 1973 Act does not contain such a specific special procedure or make specific reference to wholly surrounded areas. The City argues the annexation of wholly surrounded areas is

a unique problem, requiring different procedures than those used to annex adjacent areas. The City points to this Court's language in Brodie v. City of Missoula, 155 Mont. 185, 468 P.2d 778, stating the purpose of the summary procedure in section 11-403(1), as permitting orderly development of city boundaries and preventing islands of land wholly surrounded by the city which might create myriad problems.

Brodie was decided in 1970 so we assume the legislature had full knowledge of the Court's concern with the unique situation of annexation of wholly surrounded land.

In Helena Valley Irrigation Dist. v. State Highway Comm'n, 150 Mont. 192, 199, 433 P.2d 791, this Court cited with approval the general rule of statutory construction stated in 82 C.J.S. Statutes §316, p. 541:

> "It is also presumed that the legislature had, and acted with respect to, full knowledge and information as to the subject matter of the statute and the existing conditions and relevant facts relating thereto, as to prior and existing law and legislation on the subject of the statute and the existing condition thereof, as to judicial decisions with respect to such prior and existing law and legislation * * *."

By drawing no distinction between the annexation of wholly surrounded and adjacent areas, the legislature is presumed to have intended the 1973 Act should pertain to all types of annexation covered by the existing statutes.

The City argues that when the legislature stated the purpose of the 1973 Act was to develop a system for "adding to and increasing cities boundaries", section 11-515, the annexation of surrounded areas was excluded thereby. Section 19-102, R.C.M. 1947, states in part:

> "Words and phrases used in the codes and other statutes of Montana are construed according to the context and the approved usage of the language * * * ."

The word "add" is defined in Webster's Unabridged New International Dictionary, 2nd Edition, 1934:

> "1.  To join or unite, as one thing to another, or as several particulars, so as to increase the number, augment the quantity, enlarge the magnitude, or so as to form into one aggregate * * *."
> (Emphasis added)

Thus the approved usage of the word "add", in the context of the 1973 Act, would indicate the legislature intended to include any and all forms of annexation in the application of the 1973 Act.

The City argues the 1973 Act did not repeal the existing annexation laws.  The 1973 Act does state in section 11-525, that the provisions of existing laws which are inconsistent with the 1973 Act are controlled by the 1973 Act and the annexation procedure in the 1973 Act is supplemental and independent of the existing annexation laws.

The City further argues the wording of section 11-525 permits a city to use the annexation procedures of the existing laws unless those procedures are clearly inconsistent with the provisions of the 1973 Act.  This does not follow as a matter of law, since the City's interpretation would permit a city to choose the annexation procedure most convenient to the city, ignoring, if it so chose, the provisions of the 1973 Act, thereby rendering these provisions useless.  This Court stated in Helena Valley Irrigation District:

> "The court will presume that the legislature would not pass useless or meaningless legislation.  82 C.J.S. Statutes, §316, pp. 546-547."

Reaffirming this presumption in Kish v. Montana State Prison, 161 Mont. 297, 301, 505 P.2d 891, the Court stated:

> "The legislature does not perform useless acts."

If a city can annex an area using existing annexation procedures which are not inconsistent with the 1973 Act, it may

continue to do so. But the city must follow the procedures of the 1973 Act in all other instances, or the 1973 Act will be meaningless and a useless action of the legislature.

In the instant case, annexations of areas included in a rural fire district are governed by the provisions of the 1973 Act, which state as a standard for annexation in section 11-519:

> "(d) no part of the area shall be included within the boundary, as existing at the inception of such attempted annexation, of any fire district organized under any of the provisions of chapter 20, Title 11, R.C.M. 1947, provided that such fire district was originally organized at least ten (10) years prior to the inception of such attempted annexation."

Any annexation of rural fire district land would be governed by the 1973 Act. Any annexation procedure involving rural fire district land undertaken pursuant to any other Montana annexation law would be inconsistent with the prohibition contained in section 11-519(d).

The City contends the district court judgment of October 10, 1974, enjoining the City from attempting any annexation procedure of whatever kind or character of any land within the boundaries of the Missoula Fire District, prevents the annexation of such rural fire district land even when the property owners in that area desire such annexation. This is true only as long as the land remains in the rural fire district. Section 11-2008, R.C.M. 1947, sets forth a procedure for withdrawing land from a rural fire district. Once the land is withdrawn annexation may proceed if the statutory annexation requirements are met. In the spring of 1975, Missoula Fire District land was removed from the rural fire district and annexed to the City.

The City argues that the procedure for withdrawal of rural fire district land is, for practical purposes, unavailable to property owners desiring annexation, unless they are developers with sufficient financial backing. This argument is based on the

provision in section 11-2008(c) requiring the county commissioners, upon receipt of a petition for withdrawal from the requisite number of property owners, to give notice of the hearing on the petition by first class mail to each freeholder in the rural fire district. The City implies that the statute requires the petitioners to assume the costs of such mailings, thereby making the costs prohibitive. A reading of the statutory language puts the duty of mailing on the county commissioners, but that question is not before us on this appeal.

The judgments of the district court are affirmed.

--------------------------------------

Chief Justice

We concur:

_Justices_