No. 81-367

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

STATE ex rel HILANDS GOLF CLUB,
a non-profit Corporation,

                    Relator and Respondent,

        vs.

THE CITY OF BILLINGS, MONTANA a
municipal corporation, et al.,

                    Appellants and Respondents.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone
              Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellants:

        Peterson Law Offices, Billings, Montana
        Kenneth D. Peterson argued, Billings, Montana

    For Respondent:

        Berger, Sinclair & Nelson, Billings, Montana
        Arnold Berger argued, Billings, Montana

---

                    Submitted:  January 13, 1982

                      Decided:  June 24, 1982

Filed: JUN 24 1982

_____
                                    Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The City of Billings appeals a Yellowstone County District Court judgment which declared that the Hilands Golf Club is statutorily exempted from the City's attempts to annex it.

The City has raised three arguments. It claims first that the statutory exemption for golf courses does not apply to annexations commenced under the Planned Community Development Act. Second, it claims that the Golf Club was not entitled to protest the City's proposed annexation because it is not a "resident freeholder" who is entitled to object under the Act, and because the Golf Club filed no written protest with the City, as the Act requires. Third, the City claims that mandamus was an improper remedy in this case because the Act provides for judicial review.

We hold that the statutory exemption for golf courses does not apply to annexations commenced under the Planned Community Development Act, that corporations are "resident freeholders" as that term is defined by the Act, that the City received written notice of the Golf Club's protest to the annexation, and that mandamus was a premature remedy in this case. We also hold as a matter of law that the City cannot annex the Golf Club under the Planned Community Development Act unless the Golf Club consents to the annexation. We affirm and modify the District Court's judgment and dismiss the case.

The Hilands Golf Club owns a 45 acre, nine-hole golf course which was completely surrounded by open country and farmlands when it was established in 1923, but which is now completely surrounded by the City of Billings. The City

-2-

first attempted to annex the Golf Club in 1972, under section 7-2-4501, et seq., MCA, a procedure for the annexation of wholly surrounded land. It was unsuccessful, however, because section 7-2-4503(2), MCA, provides that golf courses are exempt from annexation under that procedure. The City's next attempts at annexing the Golf Club over the next few years were terminated for a variety of reasons which need not be explained here.

After the City passed a December 1980 Resolution of Intention to Annex the Golf Club, the Golf Club petitioned the Yellowstone County District Court to issue a writ of mandamus commanding the City to terminate its annexation attempt because the Golf Club was still exempt from annexation under section 7-2-4503(2), MCA. The District Court issued this writ in early January 1981, but gave no reasons for its command to terminate the annexation procedure. Despite the issuance of that writ, the City nonetheless passed an ordinance which would make the Golf Club's annexation effective on March 26, 1981. After an April 24, 1981 nonjury trial, the District Court adopted verbatim the Golf Club's proposed findings and conclusions, and held that the City was without jurisdiction to annex the Golf Club under section 7-2-4503(2), MCA. (In City of Billings v. Public Service Comm'n. (1981), ___ Mont. ___, 631 P.2d 1295, 38 St.Rep. 1162; Jensen v. Jensen (1981), ___ Mont. ___, 631 P.2d 700, 38 St.Rep. 1109; Beck v. Beck (1981), ___ Mont. ___, 631 P.2d 282; 38 St.Rep. 1054; Tomaskie v. Tomaskie (1981), ___ Mont. ___, 625 P.2d 536, 38 St.Rep. 416, we have disapproved the practice of verbatim adopting a party's proposed findings and conclusions.)

The City appeals that decision, claiming that it has proceeded under the Planned Community Development Act (section

-3-

7-2-4701, et seq., MCA), which provides no exemptions for golf courses.

After this Court's decision in Missoula Rural Fire District v. City of Missoula (1975), 168 Mont. 70, 540 P.2d 958, holding that the Planned Community Development Act superseded the other forms of annexation where a conflict existed, the 1979 Montana Legislature recodified the confusing maze of eight statutory annexation procedures into six separate "Parts" (Title 7, Ch. 2, Parts 42-47) and amended the Planned Community Development Act to provide that each of these eight methods of annexation is a separate and distinct procedure. Section 7-2-4204(2), MCA, states:

> "The governing body of the municipality to which territory is proposed to be annexed may in its discretion select one of the annexation procedures in parts 42 through 47 that is appropriate to the circumstances of the particular annexation. The municipal governing body must then follow the specific procedures prescribed in the appropriate part." (Emphasis added.)

The statutory exemption for golf courses pertains only to the situation in which a city attempts to follow the procedure for annexing wholly surrounded land (sections 7-2-4501, et seq., MCA). It is important to note that under that procedure the legislature provided no right to object to the annexation, but gave protection to certain landowners by providing that

> "Land shall not be annexed under this part whenever the land is used:
>
> "(1)   for agricultural, mining, smelting, refining, transportation, or any industrial or manufacturing purpose; or
>
> "(2)   for the purpose of maintaining or operating a golf or country club, an athletic field or aircraft landing field, a cemetery, or a place of public or private outdoor entertainment or any purpose incident thereto." (Emphasis added.) Section 7-2-4503, MCA.

-4-

In this case, however, the City chose to attempt annexation by the method set forth in the Planned Community Development Act, thereby avoiding the golf club exemption contained in section 7-2-4503, MCA. The Planned Community Development Act provides no exemption for golf courses, but it does provide that a majority of residents who oppose annexation may file written protests and thereby prevent annexation. Under this method of annexation the City is required to:

"1. file a resolution of intention to annex, describing the hearing date to be set not less than 30 and not more than 60 days following adoption of the resolution (section 7-2-4707, MCA)

"2. publish the notice for four successive weeks in a newspaper or in five other public places (section 7-2-4708, MCA)

"3. hold a hearing on the question of annexation (section 7-2-4709, MCA)

"4. receive written protests from resident freeholders in the area proposed to be annexed for 20 days after the hearing (section 7-2-4710, MCA)

"5. stop annexation proceedings for one year if a majority of resident freeholders protest in writing (section 7-2-4710, MCA)."

The record shows that neither party proceeded exactly in conformity with these rules. Instead of directly filing a written protest with the City, the Golf Club served the City with a copy of its petition for a writ of mandamus. Counsel for the City admitted during argument of this case that the City was aware of the Golf Club's protest before it passed its Resolution of Intention to Annex the Golf Club, and that the Golf Club's petition for a writ of mandamus was received within 20 days after the public hearing and was sufficient to constitute written notice of the Golf Club's protest. As such, it is clear that the sufficiency of the Golf Club's notice is no longer in dispute, and we don't need to address this issue further.

-5-

In seeking to avoid application of the protest provision in section 7-2-4710, MCA, the City contends that the legislature did not intend for corporate landowners to be considered "resident freeholders" with the right to object to annexations commenced under the Planned Community Development Act. The Act provides that "resident freeholder" means "a person who maintains his residence on real property. . . ." Section 7-2-4704(3), MCA. The City argues that because this definition does not specifically include or make reference to corporate landowners, the Golf Club should be considered a "non-resident freeholder" who has no absolute right to terminate the City's annexation attempt, and instead, must convince the City to terminate it. We find this argument meritless. If the legislature had intended to exclude corporate landowners from the definition of "resident freeholders" and afford them fewer rights than other landowners, it should have stated that intention more explicitly. A corporation which owns real property is a "resident freeholder" as that term is defined in the Act.

The City argues that annexation under the Planned Community Development Act is the proper way to proceed in this case because the City can provide all the services the Golf Club may need. The City argues that the Golf Club presently pays no taxes to the City, but receives the benefits of police patrol, fire protection, and road services in the areas surrounding the Golf Club. The City admits that annexing the Golf Club would ease the burden on the City's taxpayers.

The Planned Community Development Act was enacted in response to the situation where

-6-

". . . in many cities city government is annexing and adding to cities not to the benefit of those being annexed, but to the benefit of the city, _merely to derive a greater tax base._" (Emphasis added.) Section 7-2-4702(2), MCA.

Under this Act, a City which desires to extend services to a non-annexed area must hold a public hearing and explain what services will be provided and how they will be financed. The resident freeholders in the area to be annexed may vote on any proposed capital improvements for the area. _If a negative vote is cast by more than 50% of the resident freeholders, the area may not be annexed._ Section 7-2-4733, MCA. Here, the City received a 100% negative vote (because there was only one resident freeholder who protested), and therefore was prohibited for one year from attempting to annex the golf course. At the end of this one year period, the City may again attempt to obtain the consent of the majority of resident freeholders. Section 7-2-4710(2), MCA.

We also hold that the petition for a writ of mandamus in this action was premature. Under the Planned Community Development Act, there are extensive procedures for judicial review. Within 30 days following passage of the annexation ordinance, a majority of the resident freeholders (or the owners of more than 75% in assessed valuation of real property) may petition the court for review to determine if the statutory procedures were followed by the City. Therefore, the petition for a writ of mandamus should not have been filed until _after_ the Golf Club's written protest to the City was wrongfully ignored. Because neither party to this action followed the statutory procedures, each party will bear its own costs and attorney fees.

As modified, the judgment is affirmed.

Daniel J. Shea
Justice

-7-

We Concur:

_Gene B. Daly_

_John Conway Harrison_

_Daniel B. Harrison_

_Frank I. Haswell_
Justices